Lynn et al., Appellants, *v.* Allied Corporation et al., Appellees.

(No. 52755 — Decided November 23, 1987.)

*Lustig, Icove & Lustig Co., L.P.A., Edward A. Icove* and *Brian D. Schorr,* for appellants.

*Squire, Sanders & Dempsey, Thomas H. Barnard, Maria J. Codinach* and *David K. Smith,* for appellees.

Krupansky, J. On August 2, 1985, plaintiffs, Janice H. Lynn and her husband Luther C. Lynn, filed a complaint in the Cuyahoga County Court of Common Pleas against defendants, Allied Corporation and Duane Crockrom. Defendants filed an answer on October 28, 1985. On December 11, 1985, plaintiffs filed a motion and memorandum to file an amended complaint and a proposed amended complaint. Defendants filed an answer to the amended complaint on December 19, 1985.

In the plaintiffs' amended complaint the plaintiffs alleged the following: (1) defendants intentionally and/or negligently inflicted severe emotional distress on Janice Lynn, (2) defendants intentionally or negligently invaded Janice Lynn's right to privacy, (3) defendants breached their employment relationship with Janice Lynn, and (4) defendants' conduct caused Luther Lynn to suffer loss of consortium. Con-

sequently, plaintiff Janice Lynn sought to recover $175,000 in compensatory damages and $200,000 in punitive damages plus costs and attorney fees and plaintiff Luther Lynn requested $50,000 in damages plus costs and attorney fees.

On May 20, 1986, defendants filed a motion for summary judgment. Plaintiffs filed a brief in opposition to defendants' motion for summary judgment on July 31, 1986. Defendants filed a reply brief in support of their motion on September 5, 1986. On September 16, 1986, the trial court granted defendants' motion for summary judgment and dismissed the case. Plaintiffs filed a timely notice of appeal on October 3, 1986.

The case *sub judice* arose from the following facts. Appellant Janice Lynn had been employed as a nurse by appellee Allied Corporation and its predecessors for approximately eighteen years. In October 1983, in order to decrease Allied's need for involuntary layoffs, Allied offered its employees who were eligible for pension benefits "A Special Voluntary Retirement Incentive Program" (hereinafter "ASVRIP"). Allied's eligible employees were informed about ASVRIP on or about October 25, 1983, and they were given until 3:00 p.m. November 4, 1983, to notify Allied of their decision to accept or decline ASVRIP.

On October 24, 1983, Janice Lynn underwent gall bladder surgery at Huron Road Hospital. Consequently, appellant was on medical leave when Allied announced ASVRIP to its employees. Since appellant Janice Lynn was an employee eligible for ASVRIP, on October 28, 1983, Duane Crockrom, manager of Allied's personnel department, telephoned Mrs. Lynn at the hospital to inform her about ASVRIP. Appellant maintains she was extremely distraught and hysterical as a result of Mr. Crockrom's phone call and the phone call had a deleterious effect on her recovery from the surgery.

In her deposition Mrs. Lynn testified as to what occurred during the telephone conversation. A portion of the deposition transcript follows:

"Q. Now I would like you to tell me about the phone call. What happened? Your phone rings and —

"A. The phone rang and I —

"Q. Where were you at the time it rang?

"A. I was just coming out of the bathroom, walking from the bathroom, and I walked to the phone.

"Now, what all do you want to know? Exactly what —

"Q. Yeah, exactly what happened then.

"A. I can only remember the first words were — and I knew something had to be wrong — 'Hi, Jan, how are you,' something like that, and then he said 'Has Jim Crandell called you yet,' and I said 'No,' and he says 'Oh,' something like that, 'He left the dirty work for me,' or something like that, and I thought 'What's coming,' you know, and then he — I cannot tell you exactly from there on what he said. He just said something about this volunteer retirement program and just a brief description of what it entailed, and that he would send me papers in the mail that day, or the papers were in the mail that day, so that I could read about it, and that was it.

"Q. That's all you can recall of the conversation?

"A. That's all I can recall. * * *"

Subsequently, Mrs. Lynn received the letter mentioned in the above telephone conversation. A portion of that letter follows:

"The Special Voluntary Retirement Incentive Program is available to any salaried employee who is eligible to retire under any of the provisions of the Pension Plan on or before January

1, 1985. *I want to emphasize that this program is entirely at your option and should you decline, it will in no way affect future performance reviews or your continued employment.* You will have until November 4, 1983 at 3:00 p.m. to make your decision." (Emphasis added.)

On November 4, 1983, Janice Lynn elected to participate in ASVRIP.

## I

Appellants' first assignment of error follows:

"The trial court committed reversible error in granting defendants' motion for summary judgment because it had jurisdiction to consider plaintiffs' common law claims."

Appellants' first assignment of error has merit.

Appellants correctly argue the state court has jurisdiction over the case *sub judice* and their state common-law causes of action are not preempted by the Employee Retirement Income Security Act of 1974 ("ERISA" or "Act"). Appellants' claims of emotional distress, invasion of privacy, breach of contract and loss of consortium are not preempted by Section 1144(a), Title 29, U.S. Code, which provides:

"Supersedure; effective date. Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 USCS Sec. 1003(a)] and not exempt under section 4(b) [29 USCS Sec. 1003(b)]. This section shall take effect on January 1, 1975."

The term "state law" includes the common law of the states or any of their political subdivisions. Section 1144(c)(1) and (2), Title 29, U.S. Code. Further, under Section 1144(c)(2), Title 29, U.S. Code, the state instrumentality must be one which purports to regulate, either directly or indirectly, the terms and conditions of employee benefits plans covered by ERISA. Appellants' claims center around a telephone conversation informing Mrs. Lynn of her option for early retirement and do not bring into consideration the terms and conditions of any benefit plan. Further, and perhaps most importantly, no decision by this court would regulate the terms and conditions of this or any other benefit plan.

Appellants' claims concern a telephone conversation which Janice Lynn received at Huron Road Hospital while recuperating from gall bladder surgery. Appellants contend this conversation amounted to a termination of her employment and was, under the circumstances, an infliction of emotional distress, an invasion of privacy and a breach of contract. Appellants' claims in no way involve benefits, terms or conditions of Allied Corporation's retirement plan.

The crucial issue is whether appellants' claims relate to an ERISA benefit plan. The preemption clause of the Act, Section 1144(a), Title 29, U.S. Code, demonstrates Congress intended to establish pension plan regulation as an exclusive federal concern. *Alessi* v. *Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 523. In *Alessi, supra,* the court held a New Jersey workers' compensation law related to an ERISA benefit plan because it eliminated a method for calculating pension benefits. The court recognized this method for calculating benefits was permissible under federal law. A law relates to an ERISA benefit plan if it has a connection or reference to such plan. *Shaw* v. *Delta Air Lines, Inc.* (1983), 463 U.S. 85, 96-97. The words "relate to" of Section 1144(a) must be read in a broad sense and include more than state laws specifically designed to affect employee benefit

plans and more than state laws concerning subject matters covered by ERISA. *Shaw* v. *Delta Air Lines, Inc., supra,* at 98-99. Therefore, any state law *affecting ERISA benefits* is preempted by the Act.

While the subject of the phone conversation concerned an early retirement plan, it failed to discuss the early retirement plan or any benefits to which appellant may be entitled under a specific retirement or any other plan. It merely informed appellant of the existence of the option to take early retirement.

The notice or reporting and disclosure provisions of the Act are inapplicable as they concern the liability of an employer for failure to fully disclose material terms, conditions and alterations of a benefit plan. Appellants' suit does not allege they were harmed due to a failure to disclose benefits, terms and conditions. See Sections 1021-1031, Title 29, U.S. Code.

Appellants' amended complaint in no way states or avers the appellees' conduct prevented her from exercising any rights under Allied's employee benefit plan. Quite to the contrary appellants allege intentional infliction of emotional distress, invasion of privacy and breach of an implied-in-law employment contract based on a conversation in which Mrs. Lynn was purportedly forced to take early retirement. This incident of the telephone conversation affects ERISA too remotely or tenuously to be considered related to ERISA.

"In *Shaw* v. *Delta Air Lines, Inc.,* [463] U.S. [85], * * * (1983), the Supreme Court stated that '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' *Id.* at [96-97] * * *. In a later footnote the Court expressly indicated that '[s]ome state actions may

affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan.' Suggesting such a situation, the Court cited *American Telephone and Telegraph Co.* v. *Merry,* 592 F. 2d 118, 121 (2d Cir. 1979), which held that state garnishment of a spouse's pension income to enforce alimony and support orders is not preempted by ERISA. *Id.* at 100, fn. 21 * * *." *Kelly* v. *Internatl. Business Machines Corp.* (E.D. Pa. 1983), 573 F. Supp. 366, 371.

The sole purpose of Crockrom's telephone call was to inform Mrs. Lynn she might be eligible for early retirement. Appellants' suit does not concern the retirement plan itself or any benefits thereunder; rather, the suit contends this notification: (1) was an intentional or negligent infliction of emotional distress and/or an intentional or negligent invasion of privacy because it occurred while appellant was recuperating from gall bladder surgery, and (2) amounted to a termination of employment. Appellants' claims are too tenuous and remote to relate to an ERISA plan since they do not concern the terms and conditions of the plan. Mrs. Lynn is not claiming a deprivation of benefits under the plan, she is claiming the phone conversation amounted to tortious conduct and resulted in her termination. Such claims have at best an indirect or tangential effect on the plan and are based upon state law of general application which also at best has an indirect effect on the retirement plan.

Where a claim for damages is not directly related to an ERISA plan, but rather tenuously, peripherally and remotely involves plan administration, there is no remedy under the Act. There is no remedy under the Act for appellants' claims. Further, the state common law regarding infliction of emotional distress and invasion of

privacy does not directly regulate ERISA plans.

"The emotional distress claim stands on different ground. There is no ERISA provision which affords a remedy for the intentional infliction of emotional distress in the handling of a claim for employee benefits. Nor can it be said that a state tort law regarding intentional infliction of emotional distress directly regulates an ERISA plan. If either of these situations were the case, the foreclosure of the state claim due to preemption would be obvious. The question which is presented here, however, is whether state laws regarding intentional infliction of emotional distress 'relate to' ERISA employee benefit plans within the meaning of § 514.

"* * *

"*After careful consideration this Court has concluded that the state law pertaining to intentional infliction of emotional distress falls into the category of state actions which impact upon ERISA benefit plans in too tenuous a way to be considered as 'relating to' such plans.* Admittedly, the occurrence of the complained of conduct, forming the basis for the state tort action, in the context of an application for ERISA benefits intimates a marginal effect on the standards governing administration of ERISA plans. Nonetheless, in view of Pennsylvania's restriction on recovery for emotional distress to situations involving intentionally 'outrageous conduct,' and considering the separate concerns of the federal scheme and the state tort law, this effect is too insubstantial to warrant preemption of the state law. The state's legitimate and important interest in protecting its citizens cannot be preempted on such a slim reed. *Cf. Farmer* v. *Carpenters,* 430 U.S. 290, 304-306, 97 S. Ct. 1056, 1065-1066, 51 L. Ed. 2d 338 (1977) (§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185, does not preempt claims of intentional infliction of emotional distress)." (Emphasis added.) *Kelly, supra,* at 371. In the case *sub judice,* there is even less of a relationship between the complained-of conduct and an ERISA plan. Appellants' case does not even remotely arise out of an application for ERISA benefits. Like Pennsylvania's laws governing emotional distress, Ohio's tort law regulates activity which is entirely separate and distinct from the activity regulated by ERISA.

Further, appellants' claims do not allege Allied Corporation or its agent Duane Crockrom in any way violated any fiduciary duty under the plan.[1] Appellants' claims allege Crockrom committed tortious acts and omissions while performing what has been characterized as purely ministerial functions under the Act. "Fiduciary" is defined in Section 1002(21)(A), Title 29, U.S. Code, which provides:

"Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary

---

[1] Nevertheless, this sub-issue must be addressed because if appellants' claims do involve fiduciary duties regulated under the Act then the lower court had no jurisdiction. Further, appellee argues appellants' claims do involve regulated fiduciary duties.

responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 USCS Sec. 1105(c)(1)(B)]."

The Treasury Regulations further elaborate upon this concept by stating that which is not a "fiduciary." Treasury Reg. Sec. 2509.75-8, D-2, which is in the form of a question and answer, speaks directly to the fiduciary issue:

"Q. Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

"(1) Application of rules determining eligibility for participation or benefits;

"(2) Calculation of services and compensation credits for benefits;

"(3) Preparation of employee communications material;

"(4) Maintenance of participants' service and employment records;

"(5) Preparation of reports required by government agencies;

"(6) Calculation of benefits;

"(7) Orientation of new participants and advising participants of their rights and options under the plan;

"(8) Collection of contributions and application of contributions as provided in the plan;

"(9) Preparation of reports concerning participants' benefits;

"(10) Processing of claims; and

"(11) Making recommendations to others for decisions with respect to plan administration?

"A: No. Only persons who perform one or more of the functions described in section 3(21)(a) [29 U.S.C. Sec. 1002(21)(A)] of the Act with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

"However, although such a person may not be a plan fiduciary, he may be subject to the bonding requirements contained in section 412 of the Act if he handles funds or other property of the plan within the meaning of applicable regulations.

"The Internal Revenue Service notes that such persons would not be considered plan fiduciaries within the meaning of section 4975(e)(3) of the Internal Revenue Code of 1954."

There is no evidence Crockrom was a fiduciary under the plan. Crockrom merely communicated the existence of an early retirement plan to the appellant. Fiduciary duties do not include purely ministerial actions such as advising participants of the availability of the plan for early retirement or preparing employee communication materials. As such, there is no available remedy for state common-law causes of action arising as a result of purely ministerial activities under the plan. See Section 1109, Title 29, U.S. Code[2]; *Munoz* v. *Prudential Ins.*

---

[2] Section 1109, Title 29, U.S. Code provides:

"(a) Any person who is a fiduciary with respect to a plan who breaches any of

*Co. of America* (D. Colo. 1986), 633 F. Supp. 564.

This type of ministerial duty does not give rise to fiduciary liability under the Act. Further, appellants' state common-law claims do not concern regulation of the plan. Where there is no remedy under the Act and where the state law does not concern regulation of a pension plan, state law does not preempt the Act. *Ogden* v. *Michigan Bell Tel. Co.* (E.D. Mich. 1983), 571 F. Supp. 520.

We do not find application of state law to appellants' claims will in any way alter regulation of the retirement plan as appellants' claims do not concern the regulation or administration of the plan. Rather, they concern a purely informative phone conversation. There is absolutely no evidence Duane Crockrom was a fiduciary of the plan. The telephone conversation did not deal with the administration of the plan but merely informed Mrs. Lynn of the availability of an early retirement plan if she wished to voluntarily elect early retirement. Accordingly, for the foregoing reasons we find appellants' first assignment of error well-taken if in fact the trial court decided the motion for summary judgment on this ground. However, we do not know the precise theory on which the trial court granted summary judgment since the court failed to state the reasons therefor. It is unnecessary to remove the action *sub judice* to federal court since ERISA does not apply herein; consequently, the state court retains jurisdiction over this action. It is,

therefore, incumbent upon this court to explore the grant of summary judgment on the common-law grounds of (1) infliction of emotional distress, (2) invasion of privacy, and (3) breach of employment contract.

Assignment of error number one is sustained.

II

Appellants' second, third and fourth assignments of error all pertain to the validity of the trial court granting the appellees' motion for summary judgment and, consequently, they will be discussed together. Appellants' second, third and fourth assignments of error follow:

"II. The trial court committed reversible error in granting defendants' motion for summary judgment because there are genuine issues of material fact as to whether or not defendants intentionally and/or negligently inflicted serious emotional distress upon plaintiff Janice C. Lynn.

"III. The trial court committed reversible error in granting defendants' motion for summary judgment because there are genuine issues of material fact as to whether or not defendants intentionally and/or negligently invaded Janice C. Lynn's right to privacy.

"IV. The trial court committed reversible error in granting defendants' motion for summary judgment because there are genuine issues of material fact as to whether or not defendants breached their employment

---

the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such equitable or remedial relief as the

court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act [29 USCS Sec. 1111].

"(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."

relationship with plaintiff Janice C. Lynn."

These three assignments of error lack merit.

Civ. R. 56(C), which sets forth the standard for granting or denying a party's motion for summary judgment, provides in pertinent part as follows:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *" See, also, *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46.

Appellants argue the trial court erred in granting appellees' motion for summary judgment because genuine issues of material fact exist as to whether: (1) appellees intentionally and/or negligently inflicted serious emotional distress on Janice Lynn, (2) appellees intentionally and/or negligently invaded Janice Lynn's right to privacy and (3) appellees breached their employment relationship with Janice Lynn. A review of the trial court record and the applicable law establishes no genuine issues of material fact present in the case *sub judice.*

First, appellants argue appellees'

conduct constituted the intentional infliction of emotional distress on Janice Lynn. One who intentionally or recklessly causes emotional distress to another through extreme or outrageous conduct is liable for such emotional distress and the bodily injury flowing from the emotional distress. *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666 (overruling *Bartow* v. *Smith* [1948], 149 Ohio St. 301, 37 O.O. 10, 78 N.E. 2d 735). The *Yeager* court elaborated on the "extreme and outrageous conduct" requirement by quoting the Restatement of the Law 2d, Torts (1965) 71, Section 46(1), as follows:

"This approach discards the requirement that intentionally inflicted emotional distress be 'parasitic' to an already recognized tort cause of action as in *Bartow.* It also rejects any requirement that the emotional distress manifest itself in the form of some physical injury. This approach is in accord with the well-reasoned analysis of a substantial number of jurisdictions throughout the nation. See Prosser, [Law of Torts] (4 Ed. 1971), *supra,* at 598, footnote 20.

"With respect to the requirement that the conduct alleged be 'extreme and outrageous,' we find Comment *d* to Section 46 of the Restatement, *supra,* at 73, to be instructive in describing this standard:

" '* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. * * *' " *Yeager* v. *Local Union 20, supra,* at 374-375, 6 OBR at 426, 453 N.E. 2d at 671; accord *Reamsnyder* v. *Jaskolski* (1984), 10 Ohio St. 3d 150, 10 OBR 485, 462 N.E. 2d 392.

Appellants maintain Crockrom's telephoning Mrs. Lynn's hospital room to inform her about ASVRIP, without first contacting Lynn's physican to ascertain the status of her physical condition, was extreme and outrageous conduct intended to emotionally harm Janice Lynn. Appellants further allege Crockrom's phone call caused Lynn to experience emotional distress manifested by distraught and hysterical feelings, crying and elevated blood pressure. Appellants' argument is not persuasive.

When appellees contacted the hospitalized Mrs. Lynn, they were merely carrying out their obligation to provide all eligible employees with the opportunity to participate in ASVRIP. The opportunity to elect early retirement was only available for a limited time period and if appellees had not contacted Mrs. Lynn while she was on medical leave she would not have had the chance to elect ASVRIP. If Mrs. Lynn was not well enough to accept telephone calls she would not have been permitted to receive telephone calls in her hospital room. Crockrom's call to Mrs. Lynn was not of an antagonistic or harassing nature. Rather, it was informative and conducted in a businesslike manner. Clearly, appellees' conduct did not rise to the level of an atrocity. Furthermore, the law requires the resulting emotional distress to be *serious* emotional distress. While Mrs. Lynn provided testimony she was visibly upset the day she received Crockrom's phone call and the following day, appellants failed to evidence Mrs. Lynn suffered from any severe, substantial, or serious emotional problems as a result of appellees' actions. Thus, Mrs. Lynn's emotional distress did not rise to the level of *serious* emotional distress compensable under Ohio law.

Similarly, the circumstances in the case *sub judice* do not meet the requirements of negligent infliction of emotional distress under Ohio law. The Ohio Supreme Court first recognized a cause of action for the negligent infliction of *serious* emotional distress without a contemporaneous physical injury in *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109. In *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759, the court acknowledged this cause of action in a case involving a bystander to an accident. The court held in order for the bystander-plaintiff to recover under a cause of action for the negligent infliction of serious emotional distress, the emotional distress had to be both serious and reasonably foreseeable. The court defined the term "serious" in the following manner:

"* * * By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, nor-

mally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. *Rodrigues* v. *State* (1970), 52 Haw. 156, 472 P. 2d 509; *Leong* [v. *Takasaki* (1974), 55 Haw. 398, 520 P. 2d 758], *supra; Molien* [v. *Kaiser Foundation Hospitals* (1980), 27 Cal. 3d 916, 167 Cal. Rptr. 831, 616 P. 2d 813], *supra.*

"A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia. *Molien, supra,* at 933, 167 Cal. Rptr. at 841, 616 P. 2d at 823." *Paugh* v. *Hanks, supra,* at 78, 6 OBR at 119, 451 N.E. 2d at 764.

As discussed earlier in this opinion, appellant Janice Lynn described her emotional distress in terms of feeling distraught and hysterical. However, her distress did not rise to the level of being debilitating or chronic so as to constitute "serious" emotional distress. In addition, while it may have been reasonably foreseeable Mrs. Lynn would become upset, when she was initially informed about the opportunity to elect early retirement, it was not reasonably foreseeable Mrs. Lynn would be incapable of coping with the situation and suffer severe mental distress as a result. A "reasonable person, normally constituted" would not react in this manner. A "reasonable person, normally constituted" may have reacted in a happy manner and viewed the situation as welcomed retirement after eighteen years of service. For these reasons, the trial court was correct in concluding Janice Lynn did not state a cause of action for the negligent infliction of serious emotional distress.

Second, appellants maintain appellees' behavior constituted intentional or negligent invasion of Janice Lynn's privacy. In *Housh* v. *Peth* (1956), 165 Ohio St. 35, 59 O.O. 330, 135 N.E. 2d 440, the Ohio Supreme Court recognized this cause of action as follows:

"The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"* * * An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* at paragraphs one and two of the syllabus.

This invasion of privacy can be accomplished negligently as well as intentionally. *Prince* v. *St. Francis-St. George Hosp., Inc.* (1985), 20 Ohio App. 3d 4, 20 OBR 4, 484 N.E. 2d 265. In *Rinehart* v. *Toledo Blade Co.* (1985), 21 Ohio App. 3d 274, 21 OBR 345, 487 N.E. 2d 920, the court, citing the Restatement of the Law 2d, Torts (1965) 376, Section 652A, explained the unreasonable intrusion upon the seclusion of another is one of the four recognized legal concepts of tortious invasion of privacy. It is this intrusion on another's seclusion which appellants argue occurred in the case *sub judice.* If Janice Lynn was too ill to accept telephone calls she would not have had a telephone in her hospital room. Many hospital patients receive telephone calls concerning work-related issues. Not only was it perfectly reasonable for appellees to call Mrs. Lynn without first consulting her physician concerning her condition, but it would have been extraordinary conduct if appellees had in fact spoken with Mrs. Lynn's physician. Appellees' sole phone call was not intended to harass or antagonize appellant Janice Lynn and it was not reasonably

foreseeable the call would severely agitate her and interfere with her seclusion. Accordingly, appellees' conduct did not give rise to a cause of action for invasion of privacy.

Third, appellants maintain appellees breached the employment agreement with Janice Lynn since appellees failed to abide by the retirement policies set forth in the appellees' employment manual. However, the policies at issue in the manual are applicable to involuntary separation of employees. In the case *sub judice*, appellant Janice Lynn was given the opportunity to *voluntarily* elect early retirement. Consequently, the employment manual is inapplicable to the situation *sub judice* and appellant did not state a cause of action for breach of the employment agreement against appellees.

No genuine issues of material fact existed in the case *sub judice* and appellees were entitled to judgment as a matter of law. Thus, the trial court was correct in granting appellees' motion for summary judgment.

Finally, since appellant Janice Lynn's causes of action failed to survive appellees' motion for summary judgment, appellant Luther Lynn's cause of action for loss of consortium must also fail. The derivative cause of action for loss of consortium cannot provide greater relief than the relief permitted for the primary cause of action. *Messmore* v. *Monarch Machine Tool Co.* (1983), 11 Ohio App. 3d 67, 11 OBR 117, 463 N.E. 2d 108.

Appellants' second, third and fourth assignments of error are overruled.

### III

Appellants' fifth assignment of error follows:

"The trial court committed reversible error in not granting plaintiffs' motion to compel Martin German to answer questions."

Appellants' fifth assignment of error does not have merit.

Appellants deposed Martin German who was the vice president and general manager of appellee Allied's Twining Division. Appellants' counsel presented German with a hypothetical question analogous to the incident which gave rise to the case *sub judice*, *viz.*, Crockrom's phone call to Janice Lynn's hospital room, and asked German's opinion about the manner in which the situation was handled. Appellants argue the trial judge erred by refusing to compel German to state his opinion on the hypothetical question. Appellants' position is misplaced. German's opinion was irrelevant. Therefore, the trial court did not abuse its discretion in overruling the motion to compel. The appellants' fifth assignment of error is overruled.

*Judgment affirmed.*

PRYATEL, P.J., and ANN MCMANAMON, J., concur.