SOWARDS, Appellee,

v.

NORBAR, INC., Appellant.

[Cite as *Sowards v. Norbar, Inc.* (1992), 78 Ohio App.3d 545.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1326.

Decided March 5, 1992.

546

*Bidwell & Beachler Co., L.P.A., Jinx Statler Beachler* and *David M. Bidwell,* for appellee.

*Ennis, Roberts & Fischer Co., L.P.A.,* and *J. Michael Fischer,* for appellant.

---

GOLDSBERRY, Judge.

Appellant, Norbar, Inc., appeals from a judgment of the Franklin County Common Pleas Court in favor of appellee, Charles E. Sowards.

On October 16, 1986, appellee was hired by Norbar, Inc., as an over-the-road truck driver. Shortly thereafter, appellee was given a Norbar driver's manual and signed an acknowledgement stating that he had received a copy. Appellee's primary duty was to deliver mail from Columbus to Washington, D.C. and, after a twelve-hour layover in Washington, D.C., return to Columbus with another shipment of mail. Appellee was one of six drivers assigned to the Grove City to Washington, D.C. route. During the twelve-hour layover in Washington, D.C., appellee stayed in a single occupancy hotel room permanently reserved by the company.

On August 14, 1987, appellee was terminated for missing stops at the southern Maryland bulk mail facility on August 5 and 7, 1987. These stops had been added to appellee's normal route only a few days earlier. Appellant claims that appellee was informed about the extra stop by a notice attached to his driver's clipboard at the Columbus facility. Appellee denied receiving this message or specifically being told to make the extra stop by any Norbar employee.

Following his termination, appellee filed a civil action in common pleas court against appellant for breach of employment contract and invasion of privacy. The jury returned a verdict in favor of the appellee; damages were assessed at $7,500 as compensation for the breach of contract claim, $50 in actual damages, and $10,000 punitive damages for invasion of privacy. Post-trial motions were filed with the trial judge, which resulted in affirmation of all actions of the jury, except for the contract damages finding. The $7,500 verdict for contract damages was remitted to $6,564.69 on October 12, 1989. Norbar, Inc., perfected its appeal in a timely manner setting forth the following seven assignments of error:

"I. The trial court erred in overruling defendant's motion for judgment notwithstanding the verdict and/or for a new trial on plaintiff's breach of contract claim.

"II. The judgment and verdict against defendant on plaintiff's breach of contract claim are contrary to law and against the manifest weight of the evidence.

"III. The trial court erred in refusing to charge the jury on defendant's written, requested instructions regarding the jury not substituting its judgment for defendant's if the jury found that defendant acted in good faith in terminating plaintiff.

"IV. The trial court erred in refusing to submit to the jury defendant's written, requested interrogatory regarding defendant's good faith in terminating plaintiff.

"V. The jury's general verdict conflicts with and is inconsistent with the jury's answers to interrogatories posed to the jury.

"VI. The trial court erred in overruling defendant's motion for judgment notwithstanding the verdict and/or a new trial on plaintiff's invasion of privacy claim.

"VII. The judgment and verdict against defendant on plaintiff's invasion of privacy claim are contrary to law and against the manifest weight of the evidence."

Appellee's brief, filed March 14, 1990, accepts appellant's "Statement of the Case." Therefore, the court will not restate the procedural history, except to note that a cross-appeal by appellee, Charles E. Sowards, was dismissed January 29, 1990, upon motion for voluntary dismissal by both parties.

Appellant's first, second and fifth assignments of error concern the breach of contract claim and require an interpretation of the employee handbook. We will consider these assignments of error jointly.

■■■ As a general rule, an employment relationship with no fixed duration is deemed at will, meaning the employee is free to seek work elsewhere and the employer may, at any time, terminate the employment relationship for any reason not contrary to law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150. However, as an exception to the general rule, employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of employment contracts. See, *e.g., Kelly v. Georgia–Pacific Corp.* (1989), 46 Ohio St.3d 134, 545 N.E.2d 1244; and *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212. Thus, an at-will employment contract may be modified by the provisions of an employee handbook where the parties manifest an intention to be bound by the terms therein. See *Miller v. BancOhio Natl. Bank* (Apr. 23, 1991), Franklin App. Nos. 90AP–380 and 90AP–551, unreported, 1991 WL 64907; *Helle v. Land-*

*mark, Inc.* (1984), 15 Ohio App.3d 1, 15 OBR 22, 472 N.E.2d 765; *Bolling v. Clevepak Corp.* (1984), 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367.

Appellant does not contest that its driver's manual (the employee handbook) provides for a policy of progressive discipline. Rather, appellant claims that the language of the handbook is not binding upon the company and was not intended to form an employment contract.

■ The handbook sets forth the progressive disciplinary policy in relevant part as follows:

"FORMAL DISCIPLINE

"It is our sincere desire that all Employees who are presently with the Company will still be here for many years from now. Therefore, Company discipline is intended to be constructive and remedial whenever possible. Some violations of policy, most of which are set forth in this Driver's Manual, are so serious that they require immediate discharge. However, in most cases constructive discipline commences with a written warning. Do not take these warnings lightly. If you are warned in writing, it is your responsibility to correct the situation. Unless repetition of the offense is considered too serious for further constructive discipline, a disciplinary layoff results from a repeat offense. Further repetition will result in discharge; warnings are cumulative. The disciplinary process is as follows:

"1) Formal written warning for first offense.

"2) One week suspension for second offense.

"3) Discharge for third offense.

"In the event of an Employee receiving disciplinary warnings for more than one differing offense, the Company may elect to move to a more severe level of discipline without repetition of the same offense. An Employee's record shall be reduced by one disciplinary step of severity at six month intervals."

In addition to the above-cited disciplinary procedures, the handbook at issue employs a probationary period of ninety days in which an employee may be terminated for any reason without resort to the progressive discipline policy.

Appellant argues that the above-cited provisions are merely guidelines for employee discipline and were not intended to be binding upon the company. In upholding the jury's verdict, the trial court concluded the handbook was either the total embodiment of a contract agreed upon after appellant's provisional employment period or it constituted a final part of complete contract previously agreed to by both parties. In either case, the trial court concluded that its disciplinary provisions were binding on appellant and appellee. It may be that the handbook could be changed by the company upon

notice to employees without their consent, but the evidence fully supports the finding the handbook was binding until so changed.

Significantly, the language used in the handbook with respect to "formal discipline" is both specific and mandatory, indicating that the formal discipline policy was intended to be more than a mere guideline for discipline. Furthermore, other testimonial evidence in the record supports this conclusion. Appellee testified that when he was given a copy of the employee handbook by John Hartman, Vice–President of the company, he was told that the company "lived by" the language of the handbook. Appellee further stated that he was required to sign a written acknowledgment stating that he had received a copy of the handbook. In addition, both Ron Funk, the company supervisor, and Gale Williams, the company dispatcher, testified that the company strictly adhered to the rules and regulations set out in the handbook and that the company expected its employees to comply. Based on this and other evidence in the record, it was reasonable for the jury to conclude that both parties agreed to be bound by the employee handbook and assented to its terms.

In his second assignment of error, appellant argues that in order for disciplinary rules to bind appellant, there had to be consideration from appellee. In answer to a specific interrogatory, the jury found consideration in appellee's commitment not to take additional employment, to keep a telephone, have clean clothing and bedding available at all times, and to follow in general the rules and regulations of the handbook. Essentially, the jury found that appellee's agreement to continue working for appellant under the specific provisions of the handbook after its issuance was legally sufficient consideration. Appellant contends that this finding is contrary to law. We disagree.

As a general rule of contract construction, courts will not inquire into the adequacy of consideration unless the absence of consideration is such as to constitute manifest unfairness or fraud. See, *e.g., Ervin v. Garner* (1971), 25 Ohio St.2d 231, 54 O.O.2d 361, 267 N.E.2d 769; *Mooney v. Green* (1982), 4 Ohio App.3d 175, 4 OBR 276, 446 N.E.2d 1135; *Irving Leasing Corp. v. M & H Tire Co.* (1984), 16 Ohio App.3d 191, 16 OBR 205, 475 N.E.2d 127. Indeed, this court has previously held that continued employment *after* the issuance of an employee handbook may provide adequate consideration to support an implied contract of employment based on the terms of the handbook. See, *e.g., Hanly v. Riverside Methodist Hosp. Found., Inc.* (1991), 71 Ohio App.3d 778, 595 N.E.2d 429. *Miller, supra.* See, also, *Helle; Bolling; King v. Hosp. Care Corp.* (May 13, 1986), Allen App. No. 1–85–1, unreported, 1986 WL 5910. Accordingly, it was reasonable for the jury to conclude that appellee had

furnished legally sufficient consideration to appellant in return for appellant's promise to be bound by the terms of the handbook.

■ Appellant next contends that the judgment based on appellee's breach of contract claim is against the manifest weight of the evidence. More specifically, appellee argues that even if the employee handbook be a binding contract requiring the application of a progressive discipline policy for certain violations, appellee was guilty of an offense for which progressive discipline did not apply and for which appellee could be immediately terminated. In support of this argument, appellant relies on the remaining provisions of the handbook relating to formal discipline which read as follows:

"The following offenses shall be subject to discharge without recourse to the grievance procedure:

"* * *

"6) Refusal to perform assigned work without justifiable grounds.

"* * *

"In the event an Employee is charged with any of the above, he/she shall be suspended immediately pending investigation of the incident."

At trial, there was conflicting evidence whether appellee actually knew about the "extra stop." Appellee has maintained throughout that he never received the message allegedly attached to his clipboard nor was he ever told about the "extra stop" by any Norbar employee. In contrast, supervisory personnel at Norbar testified that, based on their investigation of the incident, plaintiff must have known about the "extra stop" and that his failure to make the extra stop or to call the office for clarification provided sufficient grounds to justify immediate termination under the above-cited provisions of the handbook. The jury, by its general verdict in favor of appellee, concluded that appellee's conduct with respect to the "missed pick-up" was not serious enough to warrant immediate termination under the terms of the employee handbook. Whether appellee's conduct constituted a "refusal to perform assigned work without justifiable grounds," or was otherwise "serious" enough to justify immediate termination, was a factual determination made by the jury upon conflicting evidence. "Refusal" connotes intentional misconduct. The jury, from the evidence, could have found appellee "forgot" about the stop rather than "refused" to make it. Accordingly, this court will not substitute its judgment for that of the jury.

Finally, on the contract issues, appellant alleges as a fifth assignment of error that the general verdict conflicts with and is inconsistent with the jury's answers to interrogatories. Specifically, appellant contends the jury's general verdict that an employee was wrongfully terminated is inconsistent with a

specific finding by the jury that the employee committed an offense which violated his employer's rules and regulations and for which the employee could be immediately terminated. In response to interrogatory No. 6, the jury found that appellee "knew about the additional stop" in time to make it. In response to interrogatory No. 5, the jury found to the effect that the contract provision, to be considered in connection with the "missed pick-up," was the provision relating to refusal to perform assigned work. By the general verdict, the jury found appellee did not breach the contract.

■ Appellee correctly states the applicable law in considering alleged conflicts between a general verdict and answers to interrogatories. To overturn a verdict, the court must find the general verdict and the interrogatory answers are both inconsistent *and* irreconcilable. See *Hogan v. Finch* (1966), 8 Ohio St.2d 31, 37 O.O.2d 379, 222 N.E.2d 633; *Becker v. BancOhio Natl. Bank* (1985), 17 Ohio St.3d 158, 17 OBR 360, 478 N.E.2d 776; and *Otte v. Dayton Power & Light Co.* (1988), 37 Ohio St.3d 33, 523 N.E.2d 835.

■ While the answers to jury interrogatories Nos. 5 and 6 could be construed to have a meaning which is inconsistent with the general verdict, a court is required to make an effort to reconcile the general verdict and interrogatory answers whenever reasonably possible. *Otte, supra.* In the present case, the jury could have concluded that although appellee knew about the extra stop, he merely "missed" the extra stop as opposed to "refusing" to make it. The former would be consistent with the application of the progressive disciplinary policy and the latter consistent with termination. The jury may also have concluded appellee was never given any specific instructions from any supervisory employee about the "extra stop." Alternatively, the jurors may have concluded there was some discussion about the extra stop, and the employee was given sufficient notice that he should have made a determined inquiry into what action he should take to pursue this reference or rumor about an extra stop. If it were the latter situation, arguably the progressive disciplinary procedure would have applied, but such facts would not call for termination. Accordingly, the interrogatories are consistent with the verdict rendered in this case. Therefore, the trial court did not err by overruling appellant's post-trial motion.

Finding the interrogatories consistent with the verdict, and finding that the verdict on the breach of contract issue is in accordance with law and not against the manifest weight of the evidence, we hereby overrule appellant's first, second and fifth assignments of error.

■ The third and fourth assignments of error embody appellant's contention that the trial court should have given instructions to the jury about what

appellant sees as an application of the concept of "good faith." Appellant contends that if it breached the employment contract because of the mistaken belief appellee was guilty of serious wrongdoing, then the breach of employment contract is forgiven, waived or treated as though it never occurred. Appellant points to no provision in the contract either expressed or implied which supports a "good-faith exception," nor does appellant cite any authority supporting its position. The standard for determining whether a breach has occurred is not whether the promisor was at fault, but whether the promisee received less than he bargained for. *First Natl. Bank of Akron v. Cann* (N.D.Ohio 1980), 503 F.Supp. 419. While the presence or absence of good faith on the part of appellant may be relevant in other contexts, such as punitive damages, a good-faith breach is a breach nonetheless. Accordingly, appellant's Assignments of Error Nos. III and IV are overruled.

The remaining assignments of error address the jury's findings in favor of appellee on the invasion of privacy claim and will be considered jointly. In appellant's sixth assignment of error, appellant argues that the verdict should have been overturned by the trial court; and in appellant's seventh assignment of error, appellant contends that the verdict is contrary to law and against the manifest weight of the evidence.

 The jury found that appellant had violated appellee's constitutionally protected right of privacy by searching for a missing permit book in the motel room in which appellee was staying during his layover in Washington, D.C. Under Ohio law, in order to sustain an invasion of privacy cause, it must be established there was an intrusion of one's private affairs to such an extent that it would cause outrage or mental suffering, shame or humiliation to a person of ordinary sensibilities. *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340. It has been said of the right to privacy that is not a property right, but is an incidental personal right. *Martin v. F.I.Y. Theatre Co.* (C.P.1938), 1 Ohio Supp. 19, 26 Ohio Law Abs. 67. Notably, the existence of a cause of action for invasion of privacy in the employment context has been recognized by Ohio courts. Cf. *Tohline v. Central Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 549 N.E.2d 1223; *Lynn v. Allied Corp.* (1987), 41 Ohio App.3d 392, 536 N.E.2d 25.

Initially, appellant argues that appellee consented to the search of his room. However, appellee denied giving prior consent and stated that he was surprised when he learned that a search had been conducted. The jury resolved the conflicting evidence on the issue of consent in favor of appellee. Since there is testimony in the record supporting the jury's factual finding, we will not substitute our judgment for that of the jury.

Appellant further argues that since the room in which appellee was staying was rented and paid for by appellant, appellant's employee, Gale Williams, was privileged to enter the room without appellee's prior consent. We disagree. As stated above, the tort of invasion of privacy vindicates an individual's reasonable expectation of privacy and seclusion rather than a specific property right. *Martin, supra.* See, also, *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 13 OBR 477, 469 N.E.2d 1047. Accordingly, the fact that appellant rented and paid for appellee's room is not necessarily determinative of appellee's claim. Indeed, the record indicates that the single-occupancy hotel rooms were meant as a private refuge for drivers laying over in Washington, D.C. As the motel office was not always open when appellee arrived or departed, he had a key for the room in his possession. No business was transacted in the rooms nor was the public invited to the rooms for such a purpose. The jury finding is supported by competent, credible evidence. Similarly, the fact that appellee's personal property may not have been disturbed during the search does not preclude appellee from asserting an invasion of his legitimate right of privacy in the room itself. Cf. *Lynn, supra.*

Appellant next contends that the brief intrusion should be forgiven, since the search was conducted in good faith and without a belief appellee had stolen the permit book. However, this fact does not vindicate appellant, since an invasion of privacy need not be committed intentionally or maliciously in order to be actionable; simple negligence will suffice. *Prince v. St. Francis-St. George Hosp., Inc.* (1985), 20 Ohio App.3d 4, 20 OBR 4, 484 N.E.2d 265. Moreover, whether appellant's intrusion was reasonable, under the circumstances, is a question to be answered by the jury and this court will not substitute its judgment for that of the jury. The jury had the opportunity to observe the demeanor of the witnesses and assess their credibility. Obviously, the jury chose to believe appellee. No other issue is raised as to the invasion of privacy claim. Accordingly, appellant's sixth and seventh assignments of error are overruled.

For the foregoing reasons, all the assignments of error are overruled, and the judgment of the Franklin County Common Pleas Court is affirmed.

*Judgment affirmed.*

WHITESIDE and BOWMAN, JJ., concur.

L. ALAN GOLDSBERRY, J., of the Athens County Common Pleas Court, sitting by assignment.