HAYES, Appellant,

v.

CLEVELAND PNEUMATIC COMPANY, Appellee.

[Cite as *Hayes v. Cleveland Pneumatic Co.* (1993), 92 Ohio App.3d 36.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63654.

Decided Dec. 2, 1993.

*Paul Mancino, Jr.,* for appellant.

*Carl H. Gluek,* for appellee.

PATRICIA A. BLACKMON, Judge.

This appeal requires that we decide whether as a matter of law there exists a genuine issue for trial when an employer discharges an employee after the employer learns that the employee's chemical dependency is adversely affecting his job performance.

Ronald Hayes, plaintiff-appellant, challenges the trial court's granting of summary judgment in favor of his employer Cleveland Pneumatic Company ("Pneumatic"), defendant-appellee. Hayes argues that claims for breach of contract, promissory estoppel, handicap discrimination, fraud, and deprivation of his pension raised issues for trial. He assigns six errors for our review.[1]

Having reviewed the record and the legal arguments presented by both parties, we find that the assignments of error are not well taken, and we affirm the trial court's decision. The apposite facts follow.

---

1. See Appendix.

Hayes was an employee of Pneumatic over a period of more than twenty years. He began working for Pneumatic in January 1967. He left the company in January 1971 and moved to California to pursue a college education. He was rehired by Pneumatic in January 1978 until he was laid off in December 1982. He was rehired again by Pneumatic on October 24, 1985.

At the start of each employment period, Hayes signed an application form. The form provided, in pertinent part, that "I understand that my employment may be terminated at any time, at either party's option, my compensation ceasing at time of termination."

During the course of his employment, Hayes was granted medical leave on more than one occasion. He was granted his first medical leave from September 19, 1988 to September 27, 1988. His second medical leave was from March 27, 1989 to April 23, 1989.

After returning from his second leave of absence, Hayes was presented a form which was titled, "Condition of Employment." At the request of Pneumatic, Hayes signed the form. In the form, Hayes agreed to drug and alcohol testing and to continue rehabilitation. He also acknowledged that the failure to continue rehabilitation, the refusal to be tested, or use of any drug other than as prescribed by a physician would result in his immediate termination.

In November 1989, Hayes contacted his supervisor, Kevin Engel. Hayes told Engel that he was depressed and required medical care. Engel went to visit Hayes in a motel where he was living at the time and advised Hayes to "do what you have to do." Engel referred Hayes to the Human Resources Department. They referred him for treatment, and he was admitted to Saint Luke's Hospital on December 2, 1989 under the care of a psychiatrist, Ruth Martin, M.D. Dr. Martin admitted Hayes for treatment of his depression and cocaine addiction. Hayes was discharged from the hospital on December 21, 1989, but continued treatment was recommended.

Upon his discharge Dr. Martin wrote the following note:

"To whom it may concern:

"Ronald Hayes was discharged from SLH on 12–21–89. As discussed [with] Human Affairs, he is able to return to work on January 3, 1990."

Hayes returned to work in January, but was advised to continue treatment. On Friday, February 2, 1990, Hayes did not report to work. He did not attempt to call his supervisor for several days. When he called, he left a message with his supervisor's secretary, and explained that he was ill and needed to be hospitalized. He continued to attempt to contact his superiors to report his illness. He eventually talked to Jeff Powers at Pneumatic. Powers informed him that he had been given enough chances and would receive a termination letter.

On February 15, 1990, he contacted Dr. Martin seeking medical help. She admitted him to Saint Luke's Hospital the same day where he was treated for depression and cocaine addiction.

While in the hospital, Hayes received a termination letter from Engel. The letter was dated February 13, 1990, and provided that his termination was effective on February 12, 1990. The letter also provided that the company could no longer tolerate Hayes's repeated absences because its business condition required regular attendance and a more reliable employee.

On February 26, 1990, Dr. Martin wrote the following letter to Powers:

"At the request of Mr. Ronald Hayes and with his permission, I am disclosing the following. * * * For approximately 2 weeks prior to admission to this hospital, Mr. Hayes was increasingly depressed and suicidal. He was admitted to the psychiatric unit here at St. Luke's Hospital on 2–15–90 and is still under my care. If you need any further information, please do not hesitate to contact me."

Hayes was not rehired.

On April 8, 1991, Hayes received a letter from Pneumatic informing him that his pension rights were vested and he would receive benefits at age sixty-five.

On February 1, 1991, Hayes filed a complaint for wrongful discharge under the theories of breach of contract, promissory estoppel, fraud, discrimination, and deprivation of pension benefits. Pneumatic conducted discovery, including the depositions of Hayes and his physician, Martin. Pneumatic subsequently moved for summary judgment. The motion was granted.

■ The issue raised by the first, third, fifth, and sixth assignments of error is whether as a matter of law there exists a genuine issue for trial when an employer discharges an employee after the employer learns that the employee's chemical dependency is adversely affecting his job performance. In response to this issue, it is our belief that when the employer can demonstrate a factor such as chronic unexcused absences which adversely affect job performance, the discharge is not unreasonable under the anti-handicap discrimination law.

Hayes argues that the trial court improperly weighed the evidence presented in support of summary judgment. We resolve this matter by reviewing summary judgment under the proper standard of review as set forth in Civ.R. 56(C). It provides, in pertinent part, that:

"A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

The Supreme Court of Ohio further adopted the view: "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1096–1097, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

Hayes argues that the trial court improperly granted summary judgment on his claim for wrongful discharge. This argument is premised on the theory that Pneumatic gave Hayes assurances that warrant promissory estoppel. This argument has no merit.

"Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law."

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraphs one and three of the syllabus.

Furthermore, this court has held that in order to apply the doctrine of promissory estoppel:

"There must be a promise, clear and unambiguous in its terms, reliance by the party to whom the promise is made, the reliance must be reasonable and foreseeable, and the party claiming estoppel must be injured by the reliance." *Cohen & Co. v. Messina* (1985), 24 Ohio App.3d 22, 26, 24 OBR 44, 48, 492 N.E.2d 867, 872.

■ In this case, Engel's statement to Hayes "do what you have to do" was not a clear and unambiguous promise upon which Hayes could reasonably and foreseeably rely. Hayes, however, was also referred by Pneumatic for treatment and permitted to return to work after he was discharged from the Hospital. Engel's statement, Pneumatic's referral for treatment, and Pneumatic's subsequently permitting Hayes to return to work in January could cause him to reasonably believe that he was granted a leave of absence.

■ Nonetheless, once Hayes returned to work in January, there were no other promises or actions taken that could lead him to reasonably believe that he could take an automatic leave of absence if he suffered a relapse of his illness. When Hayes failed to appear for work on February 2, 1990, there were no circumstances from which he could reasonably conclude that he would be granted a leave of absence for subsequent medical attention. Accordingly, when the

evidence is construed most strongly in favor of Hayes, reasonable minds can only conclude that there was no factual basis for a claim of promissory estoppel against Pneumatic.

Hayes argues that the trial court improperly granted summary judgment on his claim of discrimination. The basis of this claim is R.C. 4112.02(A), which prohibits the discriminatory discharge of an employee who is handicapped within the meaning of R.C. 4112.01(A)(13). This argument has no merit.

R.C. 4112.02(A) provides that:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges, of employment, or any matter directly or indirectly related to employment."

■ Drug addiction and depression are handicaps as defined by R.C. 4112.-01(A)(13). See *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478 (holding that drug addiction and alcoholism are handicaps). While an employee may not be discharged on the basis of a handicap, "[w]here chemical dependency adversely affects job performance an employer is clearly within its rights to discharge the employee." *Id.* at 281, 25 OBR at 333, 496 N.E.2d at 480. *Hazlett* further provided that:

"To prove a prima facie case of handicap discrimination the commission must show not only that the complainant was handicapped and that the action was taken by the employer, at least in part, because the complainant was handicapped, but, further, that the complainant, though handicapped, can safely and substantially perform the essential function of the job in question. Ohio Adm. Code 4112–5–02(J). * * *" *Id.*

■ The adverse effect of a handicap on job performance is just cause for dismissal. *Harris v. Ohio Bur. of Emp. Serv.* (1990), 51 Ohio St.3d 37, 553 N.E.2d 1350 (an employee may be discharged for just cause attributable to the adverse effects that alcohol has on the employee's job performance). See, also, *Cleveland Civil Serv. Comm. v. Ohio Civil Rights Comm.* (1991), 57 Ohio St.3d 62, 565 N.E.2d 579 (misconduct and absenteeism attributable to a handicap may be considered by employer in making hiring decision).

In this case, Hayes was a valued employee. He received several promotions and took on added responsibility in his years as an employee of Pneumatic. Hayes was granted leaves of absence on several occasions.

When he requested his last leave, his supervisor came to his home and personally discussed his depression. He was subsequently hospitalized and treated for depression and cocaine addiction. Upon returning to work, he was returned to a supervisory position, similar to the position he had maintained before he went on leave. He suffered a relapse of his depression and cocaine addiction. The relapse caused him to fail to report to work after he had only been back at work for one month. Pneumatic discharged Hayes because of his repeated absences. The Company explained that its business condition required regular attendance. Hayes argues that this was discrimination.

This court has previously been faced with the issue: "How many times must an employer grant an employee the opportunity for rehabilitation and hold his job open?" *Brandenburger v. Hilti, Inc.* (1989), 52 Ohio App.3d 21, 29, 556 N.E.2d 212, 220. Previously, this court decided that, as a matter of law, an employer may discharge an employee who presents a risk to the work environment having been provided three opportunities to rehabilitate himself. *Id.* at paragraph two of the syllabus. In this case and *Brandenburger*, it is not the handicap but the failure to do the job that was the just cause for discharge.

■ Construing the evidence in support of summary judgment most strongly in favor of Hayes, reasonable minds could come to but one conclusion and that conclusion is that Hayes was discharged for just cause as a matter of law. Just cause within the meaning of R.C. 4112.02(A) was satisfied when Pneumatic determined that excessive absenteeism prohibited Hayes from performing his job adequately.

■ Even if we assume that there was no just cause for discharge, Hayes still fails to meet his burden to produce evidence that he is capable of performing his job. See *Hazlett, supra.* The several leaves taken by Hayes demonstrate his inability to perform his job. The fact that he did his job well when he showed up for work was insufficient evidence. It was not the quality of his performance, but the frequency of his absences that demonstrated that he was incapable of doing his job. Therefore, Hayes failed to present evidence of discrimination upon which reasonable minds could differ.

Hayes argues that the trial court improperly granted summary judgment on his claim for fraud. The premise of this argument is that Engel and Pneumatic urged Hayes to seek medical attention and fired him when he did so in reliance on their representations. This argument has no merit.

"A claim of common-law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true

or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or conceal- ment, and (f) a resulting injury proximately cased by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083.

Construing the evidence presented in support of summary judgment in this case most strongly in favor of Hayes, reasonable minds could come to but one conclusion and that conclusion is that there was no fraud in the discharge of Hayes. There was no false representation or conduct from which Hayes could draw the conclusion that he could take a leave of absence whenever he needed one. Engel did not make any representation that could be considered false or intentionally misleading. At best, Hayes could rely on having a leave of absence from November 1989 until he returned to work in January 1990. Reliance on "do what you have to do" was not a justifiable basis for the belief that Hayes could automatically take a subsequent leave of absence at will without prior approval from Pneumatic. There was no proof of fraud.

The issue raised by the second assignment of error is whether the trial court abused its discretion in failing to strike certain evidence offered in support of Pneumatic's motion for summary judgment. Hayes argues that the affidavit of Marjorie Smith was based upon hearsay and the deposition of Ruth Martin, M.D. violated his patient-physician privilege. This assignment has no merit.

We agree that the affidavit of Marjorie Smith was inadmissible hearsay. There is no hearsay exception that allows a witness to testify to the contents of business records, in lieu of providing and authenticating the records in question. *St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc.* (1982), 8 Ohio App.3d 155, 8 OBR 213, 456 N.E.2d 551. Pneumatic's failure to provide the records upon which Smith's affidavit was based did not meet the requirements of Civ.R. 56(E). See *id.*

Nonetheless, the facts adduced in Smith's affidavit were not necessary to the determination of the summary judgment. In his deposition, Hayes testified as to his own leaves of absence. Smith's only other averments which compared the salary of Hayes to other employees of Pneumatic were not material to the claims in the complaint. Therefore, the issue of whether Smith's affidavit was admissible is moot.

We now turn to the question of the patient-physician privilege in this case. In Ohio the patient-physician privilege and any waiver of the privilege are governed by R.C. 2317.02. The question of what constitutes a waiver depends upon the version of R.C. 2317.02 in effect at the time the action arose. *Talvan v. Siegel* (1992), 80 Ohio App.3d 781, 610 N.E.2d 1120. In the former version of R.C. 2317.02(B) in effect prior to January 5, 1988, the privilege could only be

waived by express consent of the patient, if the patient voluntarily testifies, or causes his physician to voluntarily testify on his behalf. *Id.* at 786, 610 N.E.2d at 1123–1124. In the amended 1988 and 1991 versions of R.C. 2317.02(B), the testimonial privilege is waived if a "civil action * * * is filed by the patient * * *." R.C. 2317.02(B)(1)(c). Under this limited waiver, a physician may testify to "a communication made to him by the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the * * * civil action." R.C. 2317.02(B)(2). See, also, *Talvan,* 80 Ohio App.3d at 786, 610 N.E.2d at 1123.

■ In this case, the action arose out of the discharge of Hayes in February 1990 which makes the 1988 version of R.C. 2317.02(B) the applicable law. Hayes filed an action alleging discrimination on the basis of his handicap which required medical attention. In filing this complaint, Hayes placed at issue whether he had a handicap that required medical attention and waived the privilege to the extent that the testimony of his psychiatrist was necessary to establish that he was handicapped and required medical attention.

In her deposition, Dr. Martin provided information as to the dates she communicated with Hayes, the reason for his treatment, and her communications with Pneumatic. Under the 1988 version of R.C. 2317.02(B), the privilege was waived with respect to the deposition of Dr. Martin. Therefore, the testimony of Dr. Martin was admissible evidence in support of summary judgment of the discrimination claim.

The issue raised by the fourth assignment of error is whether summary judgment was preempted by ERISA. Hayes alleges that his discharge would preclude him from receiving his retirement benefits. This assignment has no merit.

State law claims are preempted by the Employee Retirement Income Security Act of 1974 when the state law "purports to regulate, either directly or indirectly, the terms and conditions of employee benefits plans covered by ERISA." *Lynn v. Allied Corp.* (1987), 41 Ohio App.3d 392, 394, 536 N.E.2d 25, 29. Some state law claims "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 395, 536 N.E.2d at 30. A state law claim for wrongful discharge is one of those actions which in and of itself is too peripheral to affect an employee benefit plan. *Id.*

■ In this case, Hayes's promissory estoppel, discrimination, and fraud claims arising out of his discharge are too peripheral to invoke ERISA preemption. Hayes was informed that his pension benefits had vested notwithstanding

his discharge. Therefore, the mere fact that he was discharged under state law does not invoke ERISA. Accordingly, the judgment is affirmed.

*Judgment affirmed.*

PATTON, P.J., and PORTER, J., concur.

## APPENDIX

### Assignments of Error

"I. The court committed prejudicial error in weighing the evidence in ruling upon a motion for summary judgment.

"II. The court committed prejudicial error in not granting the motion to strike an affidavit offered in support of the motion for summary judgment.

"III. The court committed prejudicial error in ruling that the evidence presented did not support a claim of reasonable reliance in connection with the claim of the plaintiff as to a wrongful discharge.

"IV. The court committed prejudicial error in ruling that certain claims of the plaintiff were preempted by ERISA.

"V. The court committed prejudicial error in regranting summary judgment on the claim of discrimination.

"VI. The court erred in granting summary judgment on the claim of fraud."