[Cite as *State v. James*, 2010-Ohio-5411.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  1-10-20

    v.

ELROY F. JAMES,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2009-0233

Judgment Affirmed

Date of Decision:   November 8, 2010

APPEARANCES:

    *Jerome Doute*  for Appellant

    *Jana E. Emerick*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Elroy James (hereinafter "James"), appeals the Allen County Court of Common Pleas' judgment of sentence. For the reasons that follow, we affirm.

{¶2} The facts relevant to this appeal are as follows. In June of 2009, James was employed as a corrections officer at Allen Correctional Institution. The prison required everyone entering the prison to enter through a security checkpoint, where they walked through a metal detector and had all bags and coats examined for illegal contraband and other items not permitted inside the prison. The prison had a written code of conduct, which it provided to its employees. Included in this code of conduct was a list of items that employees were permitted to have and what they were not permitted to have inside the institution. For example, employees were not permitted to bring in cellular phones, tobacco products, or any reading materials that did not pertain to their employment, such as newspapers of general circulation.

{¶3} On June 9, 2009, James reported to work at approximately 5:30 a.m. and entered Building "A." That morning, Corrections Officer Maurice Miller was assigned to the security checkpoint in Building A. Ordinarily, C.O. Miller was not assigned to this position, but the regularly assigned officer was on vacation. James placed his lunch bag on the counter for C.O. Miller to check and then

walked through the metal detector. Upon opening the bag, C.O. Miller immediately noticed a newspaper. He also noticed two sandwich bags that appeared to contain salt and pepper in one and medication in another. When he moved the sandwich bags, he noticed what appeared to be tobacco in a vacuum sealed clear plastic bag. He removed the bag of tobacco and asked James what it was. James did not immediately answer but then stated, "It's seasoning." (Dec. 7, 2009, Tr. at 42.)

{¶4} C.O. Miller decided to call his supervisor. As he was picking up the phone to call, James said, "well, if you feel you have to do that, go ahead." (id. at p. 43.) C.O. Miller called his supervisor and told him that he was needed in "A" Building immediately. While C.O. Miller was on the phone, James reached over the counter towards where C.O. Miller had placed the vacuum sealed package and said, "I don't suppose I could get you to give me that back do you – Could you?", and C.O. Miller told him, "No." (id. at 44.)

{¶5} Lieutenant Thomas Patrick and Captain Stacie Protsman responded to C.O. Miller's call, and he informed them of what he had found. Capt. Protsman asked James if he had clocked in for the day, and when he told her that he had not, she told him to clock in and then have a seat in the entry building. Capt. Protsman left to get a camera, and Lt. Patrick further searched James' bag. Inside the bag he found an unopened box of Top tobacco and an empty sandwich container. Lt.

Patrick also told James that he should clock in, but James told him, "There's no need. I'm leaving and I ain't mad at you." (id. at 71.) James then left the building.

{¶6} The lunch bag and all of its contents were given to Allison McCullough, the prison investigator. The following day, the warden directed McCullough to weigh the vacuum sealed package of tobacco and to then open it, which she did. The package of tobacco weighed nearly two pounds. Inside the tobacco, she found another vacuum sealed package of what appeared to be marijuana and a number of blue packets of rolling papers. The suspected marijuana was later sent to the Ohio State Highway Patrol crime lab where testing revealed that the substance was 110 grams of marijuana.

{¶7} On July 16, 2009, James was indicted for one count of illegal conveyance of drugs of abuse onto grounds of a detention facility in violation of R.C. 2921.36(A)(2), (G)(2), a felony of the third degree. James entered a plea of not guilty, and a jury trial was held on December 7-8, 2009. The jury found James guilty of the sole count in the indictment. On January 27, 2010, James was sentenced to four years in prison.

**{¶8}** James now appeals raising two assignments of error for our review.[1]

## ASSIGNMENT OF ERROR NO. I

**OHIO'S FELONY SENTENCING STATUTES VIOLATE THE RETROACTIVE CLAUSE OF SECTION 28, ARTICLE II OF THE OHIO CONSTITUTION AND EX POST FACTO CLAUSE OF SECTION 10, ARTICLE I OF THE UNITED STATE CONSTITUTION WHEN THE STATUTES ARE APPLIED PURSUANT TO *STATE V. FOSTER.***

**{¶9}** In his first assignment of error, James maintains that the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, made the punishment for the offense for which he was convicted "greater than that in effect when the crime was enacted by the State Legislature," rendering it a violation of the Constitution's prohibition of ex post facto laws. We disagree.

**{¶10}** First, the Ohio Supreme Court has held that the application of *Foster* for offenses committed before that decision was rendered but which were pending direct review did not constitute an ex post facto violation pursuant to Section 28, Article II of the Ohio Constitution or Section 10, Article I of the United States

---

[1] Appellate Rule 16(A)(3) requires an appellant to set forth assignments of error. An "assignment of error" should designate a specific ruling that the appellant challenges on appeal. See Painter and Dennis, Ohio Appellate Practice (2007 Ed.), Section 1.45 (stating that "the assignments of error * * * set forth the rulings of the trial court * * * contended to be erroneous"). Procedural rules adopted by courts are designed to promote the administration of justice and to eliminate undue delay. A substantial disregard of procedural rules cannot be ignored. *Drake v. Bucher* (1966), 5 Ohio St.2d 37, 39-40. However, courts prefer to determine cases on the merits rather than upon procedural default. Although James' "Assignments of Error" do not set forth specific rulings he contends are erroneous, but are stated as general propositions, his arguments provide sufficient information for this Court to determine the issues upon which he seeks review. Therefore, we choose to decide this case on the merits.

Constitution because *Foster* did not increase potential punishments. *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶¶ 18-22. To the contrary, *Foster*, in pertinent part, merely severed those portions of the sentencing statutes that required judicial fact finding before a sentencing court could impose maximum, non-minimum, or consecutive prison sentences. *Foster*, supra. Thus, the basic sentencing terms of R.C. 2929.14(A) remained, and the application of *Foster* was not unconstitutional.

{¶11} Second, "ex post facto" literally means "after the fact." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 21. Both the United States and Ohio constitutional prohibitions of ex post facto laws apply to only certain types of legislative acts:

> **"'1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.'"**

*Id.* at ¶ 22, quoting *Collins v. Youngblood* (1990), 497 U.S. 37, 42, 110 S.Ct. 2715, quoting *Calder v. Bull* (1798), 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648 (opinion of Chase, J.); see, also, *Carmell v. Texas* (2000), 529 U.S. 513, 521-522, 120 S.Ct. 1620 (emphasis omitted). These prohibitions also constrain "a court's power to

apply precedent to cases arising before the precedent was announced." *State v. Webb* (1994), 70 Ohio St.3d 325, 330, fn.1, 638 N.E.2d 1023. The purpose of the prohibition against ex post facto laws is to assure that "'legislative [a]cts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed[.]'" *Walls*, 2002-Ohio-5059, at ¶ 27, quoting *Weaver v. Graham* (1981), 450 U.S. 24, 28-29, 101 S.Ct. 960.

{¶12} James committed his offense more than three years **after** *Foster*. Therefore, he certainly had fair warning of the possible punishment for illegally conveying drugs of abuse onto the grounds of a detention facility, and the ex post facto clauses of the United States and Ohio Constitutions are wholly inapplicable to the case sub judice. Accordingly, James' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. II

**THE PERFORMANCE OF THE APPELLANT'S TRIAL ATTORNEY WAS INEFFECTIVE AND AS A RESULT THEREOF THE APPELLANT'S RIGHT TO COUNSEL AS IS GUARANTEED BY THE 6TH AMENDMENT OF THE U.S. CONSTITUTION AND BY ART. I, SECTION 10 OF THE OHIO CONSTITUTION WAS NULLIFIED AND THUS DENIED THE APPELLANT A FAIR TRIAL.**

{¶13} In his second assignment of error, James maintains that he was denied the effective assistance of trial counsel. Specifically, James contends that counsel rendered ineffective assistance by stipulating that the substance at issue was marijuana and to the chain of custody and procedures utilized in testing the

marijuana. James further asserts that he was denied effective assistance of counsel because his counsel did not present any evidence on his behalf after informing the jury that James would testify as James had instructed him to do. Lastly, James contends that he was denied the effective assistance of trial counsel when his attorney failed to object to the testimony of a state's witness concerning telephone records connecting James to a larger criminal investigation involving the smuggling of contraband into the prison.

{¶14} A defendant asserting a claim of ineffective assistance of counsel must establish that (1) counsel's performance was deficient or unreasonable under the circumstances and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306, 2001-Ohio-191, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

{¶15} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent

representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter,* 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See *Bradley*, 42 Ohio St.3d at 141-42, 538 N.E.2d 373, citing *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623.

{¶16} As previously noted, James asserts that his trial counsel was ineffective because counsel entered into stipulations regarding the chain of custody of the marijuana, the procedures used to test the marijuana, and that the substance tested was, in fact, marijuana. Ordinarily, trial counsel's decision to enter into stipulations is a "tactical decision" that falls "'within the wide range of reasonable professional assistance.'" *State v. Green* (1993), 66 Ohio St.3d 141, 148, 609 N.E.2d 1253, quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

{¶17} Our review of the record reveals that the only stipulation entered into between the State and counsel for James was the chain of custody of the marijuana. More specifically, the parties stipulated that the item at issue that was

taken from James' lunch bag on June 9, 2009, was transported to the Ohio State Highway Patrol crime lab in Columbus, Ohio, tested, and returned to Allen County for the purposes of trial. (Dec. 7, 2009, Tr. at 14-17.) During their discussion with the trial court, counsel for both the State and James explained to the court that the suspected marijuana had been given to Trooper Gibson by McCullough, and Trooper Gibson then gave it to Trooper Root for transport to Columbus. The parties further explained that the stipulation was eliminating the need to have Troopers Gibson and Root testify.

{¶18} James has failed to specify any evidence that his counsel should have presented in lieu of this stipulation that would have undermined the chain of custody. Further, this stipulation allowed the defense to portray an air of candor before the jury and prevented additional prosecution witnesses from having to testify in court. Therefore, his claim that counsel was ineffective in entering this stipulation is without merit. See *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 347.

{¶19} Additionally, his claims that trial counsel rendered ineffective assistance by stipulating to the testing procedures and conclusion that the substance at issue was marijuana are also without merit because those claims are, simply, inaccurate. The record is devoid of any such stipulation. Moreover, the analyst, Lisa Crow, testified at trial about the testing procedures she used in this

-10-

case and the conclusion she reached that the substance she tested was marijuana. Further, she was subject to cross-examination. Although trial counsel did not ask Crow questions about the procedures she used and the conclusion she reached, James has once again failed to specify any evidence that his counsel should have presented that would have undermined the testing procedures and conclusion reached by the analyst. Furthermore, trial counsel elected to use Crow's testimony as a way to present to the jury the fact that fingerprint testing could have been but was not performed by the crime lab on the plastic packaging in which the marijuana was located, testimony that he then used in closing arguments to challenge the thoroughness of the investigation by the State. James has failed to demonstrate that this strategy of trial counsel amounted to a substantial violation of counsel's essential duties to him. Thus, we do not find trial counsel's decisions in this regard rendered his assistance ineffective.

{¶20} James next contends that trial counsel was ineffective because counsel did not permit him to testify. The decision whether to call a witness, including a defendant, is generally a matter of trial strategy, and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. *State v. Williams* (1991), 74 Ohio App.3d 686, 695, 600 N.E.2d 298; see, also, *State v. McClellan*, 3rd Dist. No. 1-09-21, 2010-Ohio-314, ¶ 58. In addition, when the record does not show an actual request from a defendant to testify and that the

attorney rejected this request, "we must presume that trial counsel made a tactical decision not to call [his client] to testify, thereby placing th[e] matter in the category of trial strategy and outside the scope of a valid ineffective assistance claim." *McClellan*, 2010-Ohio-314, at ¶ 61, citing *State v. Solomon*, 3rd Dist. No. 9-03-58, 2004-Ohio-2795, ¶ 23.

**{¶21}** Here, James asserts that the record clearly demonstrates that trial counsel's strategy was to show that the State could not prove that he "knowingly" conveyed drugs onto the grounds of a detention facility. Thus, James maintains that if he would have testified "[t]here is a more than reasonable possibility the trial attorney's strategy would have worked . . . in fact, in a trial, one party wins, the other loses and that's a fifty-fifty chance. A fifty percent chance of a different outcome, ie: winning, is a reasonable probability of outcome different from a verdict of guilty." (Appellant's Brief, p.11.) However, James does not provide any explanation of what his testimony would have been and how he was prejudiced by not being permitted to testify.

**{¶22}** Nevertheless, in reviewing the record, the Pre-Sentence Investigation in this case regarding James' version of events reported and James' statements at the sentencing hearing were that he "was set up." More specifically, James said that he gave a ride to a person he knew, but whose name he would not disclose, that morning when he saw the person walking down the street. He knew the

-12-

person was a former inmate at Allen Correctional Institution, and James said he was a "snitch." Apparently, he dropped this person off near O'Conner and Metcalf Streets in Lima and continued towards the prison, stopping at a nearby gas station to get a cup of coffee and a newspaper. He arrived at work and then proceeded to enter Building A. James did not provide any other information about what happened once he entered the prison and did not dispute C.O. Miller's, Lt. Patrick's, or Capt. Protsman's testimony about what happened. James also did not provide any further information about how the person he gave a ride to would have had an opportunity to place a nearly two pound vacuum sealed package into James' lunch bag without James noticing nor did he provide any explanation as to how he would not have realized that his lunch bag was nearly two pounds heavier when he carried it into the prison.

{¶23} In light of the testimony of the prison officers about what transpired on that day, particularly James' statements to them and his actions when the vacuum sealed package was discovered, we do not find that James has demonstrated that his version of events provides a reasonable probability that, but for counsel's failure to allow James to testify, the result of the proceeding would have been different.

{¶24} Further, the record is devoid of any actual request from James to testify and a rejection of this request by trial counsel. Thus, we must presume that

trial counsel made a tactical decision not to call James to testify, thereby placing this matter firmly in the category of trial strategy. As previously discussed, James has not shown that he was prejudiced by trial counsel's strategy, and, thus, has failed to show that he was denied the effective assistance of counsel in this regard.

{¶25} James next asserts that trial counsel rendered ineffective assistance by failing to object to the testimony of McCullough about the recorded telephone calls connecting James to other illegal activities related to smuggling contraband into the prison and the contents of James' phone records. During the trial, McCullough testified that James' phone records were subpoenaed. She further testified that a certain inmate's calls were being investigated prior to June 9, 2009, because he was suspected of being involved in drug activity and that once she received James' phone records, she found several of the inmate's family and friend's phone numbers on James' records. McCullough also found the numbers of family and friends of four other inmates on James' phone records. The actual phone records were never introduced or authenticated by the State, and James' trial counsel did not object to this testimony.[2] James now contends that trial counsel should have objected based upon the hearsay rule, Evid.R. 802, and the best evidence rule, Evid.R. 1002.

---

[2] James' trial counsel did object a number of times during this testimony, but none of those objections are relevant to the issue now raised by James.

{¶26} Generally, "there is no hearsay exception that allows a witness to testify to the contents of business records, in lieu of providing and authenticating the records in question." *Hayes v. Cleveland Pneumatic Co.* (1993), 92 Ohio App.3d 36, 44, 634 N.E.2d 228, citing *St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc.* (1982), 8 Ohio App.3d 155, 456 N.E.2d 551; see, also, *State v. Cicerchi*, 182 Ohio App.3d 753, 2009-Ohio- 2249, ¶ 52, 915 N.E.2d 350; *State v. Galloway*, 5th Dist. No. 2003-CA-0086, 2004-Ohio-2273, ¶ 49. Thus, the State should have been required to present and authenticate the actual phone records before McCullough testified about their contents. However, the question before this Court is not whether the evidence should have been admitted, but rather, whether trial counsel rendered ineffective assistance by failing to object to McCullough's testimony absent the introduction of the actual records.

{¶27} Notably, the record in this case shows that the State provided a copy of James' phone records on August 17, 2009, as part of discovery. Defense counsel filed a motion in limine to prohibit the use of this information, pursuant to Evid.R. 403, 404, and 802. This motion was overruled by the trial court on October 23, 2009. Although a ruling on a motion in limine is preliminary and the objections must be raised again at trial in order to preserve the issue for appeal, *State v. Grubb* (1986), 28 Ohio St.3d 199, 200-201, 503 N.E.2d 142, trial counsel knew the trial court's preliminary opinion on the issue was not in James' favor.

Further, by not objecting to this testimony based on hearsay and the best evidence rule and having the State respond by properly presenting the actual records, trial counsel was then able to attack the lack of evidence. In fact, in closing argument, counsel pointed out to the jury that the only evidence it had regarding these calls was the summary provided by McCullough, specifically stating:

> **There was no evidence offered to you to prove that, just her statement. And while we're on that topic, all those people who were involved supposedly with Elroy, were any of them here to testify to tell you about that, that Elroy was the one who was doing this? That he was involved in smuggling drugs in? That he knew about this?**

(Dec. 8, 2009, Tr. at 169-170.)

{¶28} Counsel later attacked this testimony again by pointing out to the jury that search warrants were not issued for James' home and the local police were not notified of James' alleged drug dealing activities although there were all these phone calls as McCullough testified, and further attacked this evidence by noting that no one ever attempted to talk to the people who were calling James to ask them why they were making these calls. Thus, counsel chose to use this evidence to attack McCullough's credibility and to challenge the credibility of the entire investigation rather than pursue the issue and possibly solidifying the State's evidence.

{¶29} Although not successful, we do not find that trial counsel's strategy was unreasonable under the circumstances. Furthermore, given all of the other

evidence previously discussed, James has failed to demonstrate that trial counsel's failure to object to this testimony undermines the confidence in the outcome of this case. To the contrary, the evidence was overwhelmingly against James, even without this testimony. As such, we find James' argument lacks merit.

**{¶30}** For all of these reasons, the second assignment of error is overruled.

**{¶31}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**