[Cite as *Field v. MedLab Ohio, Inc.*, 2012-Ohio-5068.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97990

## HEATHER FIELD

PLAINTIFF-APPELLANT

vs.

## MEDLAB OHIO, INC.

DEFENDANT-APPELLEE

**JUDGMENT:
AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-746226

**BEFORE:** Keough, J., Cooney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 1, 2012

**ATTORNEY FOR APPELLANT**

Louis J. Carlozzi
1382 West 9th Street
Suite 215
Cleveland, OH 44113

**ATTORNEY FOR APPELLEE**

Mark E. Lutz
Denlinger, Rosenthal & Greenberg
425 Walnut Street
Suite 2300
Cincinnati, OH 45202

KATHLEEN ANN KEOUGH, J.:

{¶1} Plaintiff-appellant, Heather Field ("Field"), appeals the trial court's decision granting summary judgment in favor of defendant-appellee, MedLab Ohio, Inc. ("MedLab"). For the reasons that follow, we affirm.

{¶2} In July 2011, Field brought suit through an amended complaint against MedLab alleging a cause of action pursuant to R.C. 4112.01 et seq. for disability discrimination in employment. Her complaint alleged that (1) MedLab regarded her as having a disability — a mental disorder related to alcoholism, (2) her change in sales territory and eventual termination was an adverse employment action, and (3) despite any perceived disability, she was able to perform her job. Field further alleged in her complaint that MedLab's reasons for transferring her sales territory and her termination were merely pretexts "to cover up the fact [that] * * * MedLab regarded Field as having a disability." Following discovery, MedLab moved for summary judgment, which was granted by the trial court.

{¶3} Field appeals, raising as her sole assignment of error that the trial court erred in granting summary judgment in favor of MedLab.

{¶4} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse

to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc*. 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; *Temple v. Wean United, Inc*., 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

{¶5} It is well established that the party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Id*. The nonmoving party has a reciprocal burden of specificity and must set forth specific facts showing a genuine issue exists for trial. *Id*. The reviewing court evaluates the record in a light most favorable to the nonmoving party. *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990). Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

{¶6} Disability discrimination in employment is prohibited by R.C. 4112.02, which provides in pertinent part:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the * * *disability, * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate

against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

**{¶7}** To establish a prima facie case of disability discrimination under R.C. 4112.02(A), the party seeking relief must first establish:

(1) that she was [disabled], (2) that an adverse employment action was taken by an employer, at least in part, because the individual was [disabled], and (3) that the person, though [disabled], can safely and substantially perform the essential functions of the job in question.

*DeBolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474, 2001-Ohio-3996, 766 N.E.2d 1040, ¶ 39 (10th Dist.), citing *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571, 697 N.E.2d 204 (1998).

**{¶8}** R.C. 4112.01(A)(13) defines "disability," as:

[A] physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; *or being regarded as having a physical or mental impairment.* (Emphasis added.)[1]

**{¶9}** In this case, Field does not contend that she has a disability; rather, she asserts that she satisfies the disability definition because MedLab "regarded her as having a

---

[1] *See also* 42 U.S.C. 12102(1)(C). Courts are permitted to look to federal regulations and cases interpreting the Americans with Disabilities Act ("ADA") for guidance when interpreting and applying Ohio law. *McGlone* at 573; *see also Knapp v. Columbus,* 192 Fed. Appx. 323, 328 (6th Cir.2006).

physical or mental impairment" — "a mental disorder related to alcoholism." Under R.C. 4112.01(A)(16)(a)(iii), "alcoholism" is considered a "physical or mental impairment." *Hayes v. Cleveland Pneumatic Co.*, 92 Ohio App.3d 36, 42, 634 N.E.2d 228 (8th Dist.1993), citing *Hazlett v. Martin Chevrolet, Inc*., 25 Ohio St.3d 279, 280, 496 N.E.2d 478 (1986) (drug and alcohol addictions are covered as disabilities under the statute). However, while an employee may not be discharged on the basis of a disability, "'where chemical dependency adversely affects job performance an employer is clearly within its rights to discharge the employee." *Id*., quoting *Hazlett* at 281.

{¶10} A plaintiff meets the requirements of "being regarded as" having a physical or mental impairment if the "individual establishes that she has been subjected to an action prohibited under [R.C. Chapter 4112 or 42 U.S.C. 12102] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. 12102(A)(3).

{¶11} "An individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition, when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell's Soup Co.*, 237 F.3d 701, 706 (6th Cir.2001). Moreover, to be "regarded as" disabled for purposes of a [disability] discrimination claim, the employer's negative perception must encompass a broad class of jobs. *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed. 2d 450 (1999).

{¶12} Therefore, the underlying issue is whether Field can establish a prima facie

case that the actions MedLab took were because of a perceived "mental disability related to alcoholism." We find she cannot.

{¶13} MedLab is a company that provides laboratory testing services to nursing homes and other care facilities. In 2006, Field applied for an account executive position with MedLab's predecessor, Clinical Health Laboratories. As an account executive, her job was to manage the relationship between her employer and its customers. Account executives work in "outside sales," traveling to clients and working without constant supervision. MedLab acquired Clinical Health Laboratories in January 2009, and Field continued to work for MedLab as an account executive working in outside sales and traveling in her assigned region — the Cleveland territory, which serviced approximately 100 clients.

{¶14} In July 2009, Cynthia Cook, Field's then-supervisor, noted in Field's performance appraisal that Field was not keeping up with her growing workload, that she "needed to focus on improving her organizational skills and * * * need[ed] to set aside time each day to follow up timely with * * * clients to preserve client satisfaction and retention." Additionally, Field was advised that she needed to respond more quickly to client requests, and return client phone calls "within 24 hours." It was also stressed that she needed to keep the client informed at all times.

{¶15} Cook retired in August 2009 and was replaced by Nelia Manhema, who would be Field's new supervisor. Manhema instituted new guidelines for account executives, stressing constant communication with both clients and MedLab employees.

{¶16} In January 2010, one of Field's clients indicated that it was considering leaving MedLab. Manhema instructed Field to visit the client. Although it was company practice to meet with the client within 24 hours, the account notes indicated that Field met with the client three weeks after being notified that the client might leave MedLab. The client ultimately severed its relationship with MedLab, citing communication problems with Field as its basis for leaving.

{¶17} Additionally, in January 2010, another client of Field's began experiencing computer issues. Rather than forward the issue to her immediate supervisor, Field advised MedLab president Richard Daly of the problem. Manhema reminded Field that Manhema was to be included in all correspondence concerning client problems and in the future to "overcommunicate."

{¶18} Based on Field's difficulty in handling the number of clients in the Cleveland territory, Manhema decided to transfer Field to the new Mount Vernon territory, a smaller territory with fewer clients. On March 9, 2010, around 5:00 p.m., Manhema called and emailed Sharon Nichols to offer her the position of account executive of the Cleveland territory. Nichols called Manhema within ten minutes of receiving Manhema's voicemail and accepted the position.

{¶19} At approximately 6:45 p.m. that same day, Manhema received a telephone call from Field's counselor, Kim Goldhammer, notifying her that Field would not be at work because she was going to be hospitalized. At no time during the conversation did the counselor mention alcoholism or a problem with alcohol as the reason for Field's

hospitalization. Manhema instructed Goldhammer to contact human resources. Manhema immediately sent Goldhammer a follow-up email at 6:52 p.m. reiterating that she and Field needed to contact human resources.

{¶20} Following Goldhammer's phone call, Field directly called Manhema, crying and stating that she was going to the hospital due to a "nervous breakdown." Manhema instructed her to contact human resources. Manhema then sent an email immediately to human resources at 7:06 p.m. documenting the phone call with Field, and notifying them of Field's statement that she was going to the hospital and was having a "nervous breakdown."

{¶21} Michael Stewart, MedLab's human resources manager, received a telephone call after 7:00 p.m. from an individual stating that she was helping Field through some personal and family issues and was calling because Field needed to take time off from work. At no time during this conversation did Stewart or the caller discuss the specific reasons why Field needed the time off.

{¶22} On March 16, 2010, Field returned to work and was advised that she was being transferred to the Mt. Vernon territory, because it was "less stressful," even though Field never told or indicated to anyone at MedLab that the Cleveland territory was too stressful. At this meeting, there was never any discussion with Field about her absence or the reason she was hospitalized. Field continued to work in the smaller territory, but her performance did not improve. Her continued problems with poor follow-through and customer communication led her to receive a final, written warning for poor performance

on May 12, 2010. This disciplinary report documented further client loss due to Field's failure to communicate. Included in the report was notice that if Field did not improve, she would be terminated. In July 2010, another one of Field's clients gave notice that it was discontinuing MedLab's services. Field failed to notify her supervisor, in violation of MedLab's written procedures. On July 21, 2010, Field was terminated from MedLab.

{¶23} At deposition, Field admitted she never told her supervisor or anyone with authority at MedLab that she was an alcoholic, had problems with alcohol, or that she had a mental disorder related to alcoholism.

{¶24} "An employer has notice of the employee's disability when the employee tells the employer that [s]he is disabled. * * * The employer is not required to speculate as to the extent of the employee's disability * * * ." (Internal citations omitted.) *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir.1999) (holding that plaintiff with anxiety disorder failed to make a prima facie disability case when plaintiff admitted that he never suggested that his emotional problems stemmed from a condition of disability).

> {¶25} In *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178 (6th Cir.1993), the plaintiff, who was diagnosed as bipolar, was terminated by his employer after he was caught stealing mail belonging to other doctors. The Sixth Circuit held that Landefeld failed to make a prima facie disability discrimination claim because he could not show that the hospital board know of his disability:
> There is no showing that the Board had any knowledge of plaintiff's mental illness. The Board was reacting to plaintiff's misconduct which it determined would impair plaintiff's ability to work at the hospital. Even if plaintiff's behavior was caused by his mental illness, the Board had no knowledge of this. Accordingly, there was no evidence at all that the Board acted solely in response to plaintiff's [disability]. Hence, plaintiff

failed to meet his burden[.]

*Id.* at 1181-1182.

{¶26} Similarly, Field has made no showing that MedLab had any knowledge of a "mental disorder related to alcoholism" when it decided to transfer her territory or terminate her employment. The record shows that MedLab was reacting to Field's poor performance and client loss.

{¶27} Field places much emphasis that MedLab must have regarded her as disabled because Manhema "intimated" to her that the Mount Vernon territory was "less stressful." Therefore, according to Field, "MedLab perceived [her] as mentally unable to handle stress." Stress, however, is not expressly identified as a physical or mental impairment under R.C. 4112.01. Moreover, this isolated statement does not create a genuine issue of material fact that MedLab regarded her as disabled because of a "mental disorder related to *alcoholism*." (Emphasis added.)

{¶28} Field argued in opposition to summary judgment and again on appeal that this "intimation effectively precludes her from a broad class of jobs that are as stressful or more stressful than that of Cleveland Territory Manager." In support of her argument, Field cites *Wysong v. The Dow Chem. Co.*, 503 F.3d 441 (6th Cir.2007), which we find clearly distinguisable.

{¶29} In *Wysong*, the Sixth Circuit ruled that summary judgment in favor of Dow Chemical was improper because the direct and undisputed evidence demonstrated that Dow Chemical regarded Wysong as a drug user and, thus, refused to assign Wysong to

any job in its plant. *Id*. at 453.

{¶30} In this case, Field was laterally transferred to a different, albeit smaller territory area, but the new territory included the same job description, the same pay rate, and the same job title as the Cleveland territory. Thus, the evidence does not show that MedLab perceived Field as "unable to perform the same broad class of jobs anywhere else."

{¶31} At deposition, Field admitted that she "didn't have facts" that MedLab based its decisions on a perception that she had an alcohol problem; rather, she "felt that she was being treated differently" when she got out of the hospital. She testified she did not know why, but assumed it was because of what MedLab may or may not have known about her hospital stay or why she was hospitalized. These assumptions of what MedLab may or may not have known are unsupported speculations. Such speculation does not satisfy a party's burden of producing some defense to a summary judgment motion. *Slowiak v. Land O'Lakes*, 987 F.2d 1293, 1295 (7th Cir.1993); *Karazanos v. Navistar Internatl. Transp. Corp*., 948 F.2d 332, 337 (7th Cir.1991).

{¶32} Moreover, knowledge of a single hospitalization is not knowledge of a disability. *See Webb v. Mercy Hosp.*, 102 F.3d 958, 960 (8th Cir.1996) (summary judgment properly granted in "regarded as" case where employer only knew of hospitalization, but did not know employee's specific condition or diagnosis). General knowledge about an employee's condition and medical treatment, without more, is not enough for a "regarded as" claim to survive summary judgment. *Olson v. Dubuque*

*Community School Dist.*, 137 F.3d 609 (8th Cir.1998).

**{¶33}** Additionally, the fact that Field did not learn of her transfer until after her hospitalization does not create a genuine issue of material fact. In *Kolivas v. Credit Agricole*, 2d Cir. No. 96-9559, 1997 U.S. App. LEXIS 27163 (Oct. 2, 1997), the employer terminated an employee after learning of the employee's depression and psychiatric treatment. Nevertheless, the court found that summary judgment was properly granted in favor of the employer because the undisputed evidence showed that the decision to terminate the employee was made before the employer learned of the employee's treatment and depression. *Id.* at *2.

**{¶34}** There is nothing in the record that shows that MedLab had any knowledge that Field suffered from alcoholism or any mental disorder as defined. Moreover, the record establishes that any transfer or reassignment of territories occurred prior to MedLab learning that Field was hospitalized or that she was having a "nervous breakdown." Finally, Field was not terminated from employment with MedLab until after Field continued to perform unsatisfactorily in her new "smaller" territory. The record reflects that at no time did MedLab refer to her hospitalization or any mental disorder as the reason for transfer or termination. The record supports that Field's termination was based on job performance, and Field has failed to show that MedLab's reasons for termination were merely pretexts.

**{¶35}** Accordingly, even viewing the evidence in the light most favorable to Field, we find that no genuine issues of material fact exist that would defeat MedLab's motion

for summary judgment. Field has failed to establish a genuine issue of material fact as to whether MedLab regarded her as disabled. Thus, she has failed to establish her prima facie case; summary judgment in favor of MedLab was proper. Field's assignment of error is overruled.

{¶36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

COLLEEN CONWAY COONEY, P.J., and
EILEEN A. GALLAGHER, J., CONCUR