[Cite as *State v. Dawson*, 2023-Ohio-1965.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

      Plaintiff-Appellee

-vs-

KENNETH J. DAWSON

      Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2022 CA 17

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2021 CR 94 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 14, 2023 |


APPEARANCES:

For Plaintiff-Appellee

R. KYLE WITT
PROSECUTING ATTORNEY
MARK A. BALAZIK
ASSISTANT PROSECUTOR
239 West Main Street, Suite 101
Lancaster, Ohio  43130

For Defendant-Appellant

KENNETH J. DAWSON
BELMONT CORR. INSTITUTION
P.O. Box 540
St. Clairsville, Ohio  43950

*Wise, J.*

**{¶1}**   Appellant Kenneth Dawson appeals his conviction and sentence entered in the Fairfield County Court of Common Pleas. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

### STATEMENT OF THE FACTS AND CASE

**{¶2}**   On March 17, 2021, Appellant was indicted for one count of Arson in violation of R.C. §2909.03(B)(1) and R.C. §2909.03(D)(2)(b), one count of Retaliation in violation of R.C. §2921.05(A) and R.C. §2921.05(C), one count of Possessing Criminal Tools in violation of R.C. §2923.24(A) and R.C. §2923.24(C), and one count of Unlawful Possession of a Dangerous Ordinance in violation of R.C. §2923.17(A) and R.C. §2923.17(D).

**{¶3}**   On October 29, 2021, Appellant filed a Motion to Suppress Appellant's statements Appellant made to law enforcement that he filled a mason jar with gasoline, inserted a fuse, lit the fuse, and threw the jar at the Fraternal Order of Police building in Lancaster, Ohio.

**{¶4}**   On January 13, 2022, the trial court held a hearing on Appellant's Motion to Suppress.

**{¶5}**   At the suppression hearing, Detective Sinewe testified he and investigator Flickinger went to Appellant's apartment following up on a tip that Appellant was involved in an arson. Appellant agreed to accompany them back to the police station for an interview. Appellant rode with Flickinger in the front seat of his pickup truck, as Appellant did not know the way to the station.

**{¶6}** Upon arriving at the police station, the investigators interviewed Appellant in the detective bureau interview room. Appellant was told he was not under arrest, but read and signed a notice of his Miranda rights.

**{¶7}** After thirty-six minutes, Appellant requested an attorney. Detective Sinewe continued the interview stating Appellant was not in custody at the time, and they wanted to get a little bit more information from him. Detective Sinewe stated he was free to leave.

**{¶8}** A few minutes later, Detective Sinewe decided to end the interview and take Appellant home. Appellant asked to smoke a cigarette in the parking lot before departing. Appellant reinitiated the conversation by talking about what will happen if he does not want an attorney. Detective Sinewe told him it was going to the prosecutor's desk anyway, told Appellant he was not under arrest and was free to leave. Detective Sinewe told Appellant he would take Appellant back to his apartment if he desired.

**{¶9}** Appellant then told Detective Sinewe that he was very angry at the Highway Patrol and made a very big mistake. Appellant told Detective Sinewe he wanted to go back to the interview room and have another conversation.

**{¶10}** Once back in the interview room, Detective Sinewe reiterated to Appellant that he was not under arrest, the room was not locked, he was free to leave, and they would take him back home at any time. Appellant stated he made a mistake telling his brother-in law he committed the arson. Appellant, after being told DNA was found at the scene, ended the interview by stating he was done, opening the door and exiting. Investigator Flickinger took Appellant back to his apartment. On the ride, Appellant again initiated a conversation by asking Investigator Flickinger if the matter was going away. Investigator Flickinger stated no it would proceed to a grand jury and a warrant would

likely be issued for his arrest. Appellant told Investigator Flickinger that he wanted to speak with them again and that he "did it."

{¶11} Investigator Flickinger testified he told Detective Sinewe Appellant wished to speak again. Appellant did not appear to be under the influence of any drugs or alcohol.

{¶12} The conversation began outside Appellant's apartment, and they continued it inside. During the interview, Appellant provided a full and detailed confession of the arson, but claimed he did not intend to burn a building down. He only wanted to throw an incendiary device near the Fraternal Order of Police building.

{¶13} Appellant stated he was not being forced in any way to provide a statement. Appellant told the investigators they were being nice, and that he appreciated their professionalism. Appellant allowed Detective Sinewe to take a photograph of his truck with the gas can still in the bed. Appellant prepared a handwritten statement acknowledging he understood his rights and was willing to speak with detectives. At the end of the interview, Appellant explained that he was very upset at the time of the offense and made a bad decision.

{¶14} Appellant stated that he had worn plain colored clothes and shoes with a tread he normally did not wear. He filled a mason jar with gasoline and used a paper towel for a wick. He threw the device and a second later ran from the scene. He thought the fire had most likely gone out. He said he threw out the gloves he was wearing during the crime. Appellant then said he told his brother in-law about the incident.

{¶15} On February 24, 2022, the trial court overruled Appellant's Motion to Suppress.

{¶16} On April 26, 2022, a jury trial commenced.

**{¶17}** At trial, Sergeant Mackie testified that on February 27, 2021, he was dispatched to assist a motorist, Appellant. After investigating Appellant's impairment, Appellant was arrested. Appellant wanted to fight Sergeant Mackie, stating Appellant hopes his wife or child gets raped or killed. Appellant mentions his brother's arsenal.

**{¶18}** Next, Benjamin Moore, Appellant's brother in-law testified that later on February 27, 2021, Appellant called him to say he was angry with Sergeant Mackie, that he wanted to know where his wife and kids lived, and that he wanted to fight the highway patrol sergeant. Appellant then told Moore that he filled a jar with gasoline, stuffed a rag in it, and threw it underneath where the cops hang out.

**{¶19}** Moore told his wife, Appellant's sister, what Appellant had said. He then learned the fire department was fighting a fire at the Lancaster Fraternal Order of Police building. Moore then relayed his conversation to police.

**{¶20}** Next, Investigator Hetterle with the Lancaster Fire Department testified the origin of the fire at the Fraternal Order of Police building was from underneath the building. Broken pieces of glass and a burned slab of wood were collected from the site. They were sent for analysis. Appellant's trial attorney stipulated to the chain of custody and accuracy of the results on the glass and wood pieces. The results of the chemical analysis showed the glass shards came back positive for gasoline.

**{¶21}** Appellant's attorney objected to the stipulations, citing that his client did not want the attorney to stipulate to them and for Appellee to prove its case on everything.

**{¶22}** The trial court overruled the objection finding Appellant was bound by the representations and agreement of his counsel.

**{¶23}** Appellant's counsel then informed the trial court that Appellant wanted to represent himself since his counsel stipulated to the chemical analysis. The trial court informed Appellant of his rights, penalties faced, and that he would be held to the same rules of evidence and procedure as any attorney. Appellant insisted on representing himself, signed a waiver of counsel, and proceeded *pro se.*

**{¶24}** Next Inspector Jason Coy with the Lancaster Fire Department testified he determined the incident to be an arson event. He obtained video from a nearby business showing a person leaving Appellant's apartment building, then walking past the business in a dark top, dark pants, boots, and carrying something in his hand about twenty-five minutes before the fire was called into 9-1-1.

**{¶25}** Next, Detective Sinewe testified that he and Investigator Flickinger called Appellant on March 2, 2023 to speak with him. Detective Sinewe testified consistently with his testimony from the suppression hearing culminating in Appellant's detailed confession at his apartment.

**{¶26}** Investigator Flickinger then testified consistently with his testimony from the suppression hearing, specifically that Appellant said, "I did it."

**{¶27}** Officer Beavers, formerly with Lancaster Police, testified that following the arson, she posed as a potential love interest online in order to locate Appellant. Appellant told her that cops mistreated him and now they are mad, that Appellant is trained to kill people with his hands, he's in the best shape of his life and he will take lives if they are threatening him, that he is not telling his location to anyone, and that unless she would go to Colorado she is pretty far away.

**{¶28}** On April 28, 2022, the jury found Appellant guilty of all counts of the indictment.

## ASSIGNMENTS OF ERROR

**{¶29}** Appellant filed a timely notice of appeal. He herein raises the following Assignments of Error:

**{¶30}** "I. APPELLANTS' [sic] CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE SIXTH, [sic] AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION WERE PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF TRAIL [sic] COUNSEL.

**{¶31}** "II. VIOLATION OF *MIRANDA*, COERCION, USE OF INVOLUNTARY/INADMISSIBLE STATEMENT[.]"

## I.

**{¶32}** In Appellant's first Assignment of Error, Appellant argues he was deprived of effective assistance of counsel as his trial counsel failed to obtain client's consent before stipulating to exhibits and subpoena witnesses. We disagree.

**{¶33}** Our standard is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. *Id.* First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. *Id.* If we find ineffective assistance of counsel, we must

then determine whether the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. *Id.* This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶34} Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶35} First, Appellant argues that trial counsel stipulating to the authenticity of evidence without prior consent of Appellant constitutes ineffective assistance of counsel. However, "[g]enerally, the decision to enter into stipulations is a tactical decision which 'falls 'within the wide range of reasonable professional assistance.' ' " *State v. Hammen*, 5th Dist. Stark No. 2012CA00009, 2012-Ohio-3628, ¶16, quoting *State v. James*, 3rd Dist. Allen No 1-10-20, 2010-Ohio-5411, ¶16, quoting *State v. Green*, 66 Ohio St.3d 141, 148, 609 N.E.2d 1253 (1993). "Trial counsel's decision to stipulate to uncontested facts constitutes ineffective assistance only if it results in prejudice to appellant." *Hammen* at ¶16.

{¶36} We find Appellant was not prejudiced by trial counsel's decision to enter stipulations, and Appellant has not shown the result of the proceeding would have been different absent the stipulations. The issue of the chain of custody and results of the chemical analysis were uncontested, and no evidence was presented to dispute them. We fail to see how stipulating to the uncontested facts prejudiced Appellant.

**{¶37}** Next, Appellant argues trial counsel was ineffective for failing to subpoena witnesses. Appellant argues in his brief that he had witnesses which would testify Appellant was not at the scene of the crime on the night in question. However, it is Appellant's burden to present evidence that meets a required minimum level of cogency to support his claim. *State v. King*, 5th Dist. Stark No. 2021CA00140, 2022-Ohio-676, ¶33, *appeal not allowed*, 167 Ohio St.3d 1408, 2022-Ohio-2047, 188 N.E.3d 1102, ¶33. A self-serving statement generally does not meet this required minimum level of cogency *Id.* at ¶26. Without any other supporting evidence other than Appellant's brief, we find Appellant has failed to support his allegation with evidentiary quality materials supporting his contention that trial counsel's performance fell below an objective standard of reasonable representation, or that any prejudice arose from the alleged ineffectiveness.

**{¶38}** Therefore, Appellant's first Assignment of Error is overruled.

**II.**

**{¶39}** In Appellant's second Assignment of Error, Appellant argues the trial court erred in failing to suppress statements he made to investigators. We disagree.

**{¶40}** Appellee argues that his lack of objection to the admission of his recorded statements at trial did not preserve this issue for appeal. However, Appellant filed a Motion to Suppress those statements prior to trial. "An important characteristic of a motion to suppress is that finality attaches so that the ruling of the court at the suppression hearing prevails at trial and is, therefore, automatically appealable[.]" *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887, 890 (1995). Therefore, the issue of admissibility of Appellant's statements was properly preserved for appeal.

**{¶41}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses *Id*. The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id*. "Accepting facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. That is, the appellate court will review the application of the legal standard to the facts *de novo*. *Id*.

**{¶42}** There are three methods of challenging the trial court's finding of fact. *State v. Goins*, 5th Dist. Morgan No. 05-8, 2006-Ohio-74, ¶10. First, an appellant may challenge the trial court's finding of fact. *Id*. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. *Id*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. *Id*. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

**{¶43}** The Fifth Amendment to the United States Constitution guarantees no person shall be a witness against himself, and the Sixth Amendment to the United States Constitution guarantees the accused shall have the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The inherently coercive nature of custodial interrogation can "undermine the individual's will to resist and

* * * compel him to speak where he would not otherwise do so freely." *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 2401, 180 L.E.2d 310 (2011), quoting *Miranda* at 467; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶44} In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Dickerson* at 435. *Miranda* held the State may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444, 86 S.Ct. 1602. Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. In *Miranda*, the Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. *Id*. at 469.

{¶45} If custodial interrogation continues in the absence of an attorney after a police officer advises a suspect of his rights, the State must demonstrate by a preponderance of the evidence that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to the police. *Miranda*, 384 U.S. at 475. A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact the suspect eventually confessed. *Id*. Rather, the record must show the accused was offered counsel

but intelligently and understandingly rejected the offer. *Id.* If the state does not satisfy its burden, "no evidence obtained as a result of interrogation can be used." *Id.* at 479.

{¶46} A custodial interrogation occurs when a person has been taken into custody or otherwise deprived of his freedom of action in any significant way, and a law enforcement officer questions that person. *Id.* The relevant inquiry is whether a reasonable person under those circumstances would have felt they were under arrest. *State v. Schlupp*, 5ᵗʰ Dist. Coshocton No. 2012 CA 0007, 2012-Ohio-6072.

{¶47} In *Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383, 116 S.Ct. 457 (1995), the Court offered the following description of the *Miranda* custody test:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

516 U.S., at 112, 116 S.Ct. 457. *Accord, Yarborough v. Alvarado*, 541 U.S. 652, 653, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). The police and courts must "examine all of the circumstances surrounding the interrogation," *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), including those that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to

leave," *Id.* at 325. However, the test involves no consideration of the particular suspect's "actual mindset." *Yarborough*, 541 U.S. 652, 667, 124 S.Ct. 2140, 158 L.Ed.2d 938. *Accord*, *State v. Mason*, 82 Ohio St.3d 144, 153, 1998-Ohio-370, 694 N.E.2d 932; *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995-Ohio-24, 653 N.E.2d 253 (1995).

**{¶48}** Prior to Appellant's first interview, Appellant was read his *Miranda* rights, and he agreed to speak with Detective Sinewe and Investigator Flickinger. They informed Appellant that he was not under arrest, that he was free to leave at any time and he would be driven home, and that the door to the interview room was unlocked. In this first interview, Appellant denied throwing the gasoline filled jar at the Fraternal Order of Police building. Appellant asked to speak with a lawyer before further questioning. Detective Sinewe and Investigator Flickinger attempted to get him to reconsider, but he did not.

**{¶49}** After Appellant's interview, Appellant asked to smoke a cigarette before being taken home. While outside, Appellant initiated a conversation with Detective Sinewe asking to speak with him again without an attorney to say what happened.

**{¶50}** Detective Sinewe and Investigator Flickinger brought Appellant back into the interview room, reminded Appellant of his rights, told Appellant he was still not under arrest, and that he could leave at any time. Detective Sinewe told Appellant the door is still unlocked and that he can request an attorney at any time.

**{¶51}** Appellant then discussed why he told his brother in-law he threw the lit mason jar at the Fraternal Order of Police building. He said he called the highway patrol for assistance, and they charged him with an OVI. He again denied actually throwing the jar and ended the interview without confessing. Detective Sinewe and Investigator Flickinger then drove Appellant back to his house.

**{¶52}** Appellant again told Detective Sinewe and Investigator Flickinger that he did not want to speak with a lawyer, but wanted to tell them what he did. He then confessed that in his anger, he filled a mason jar with gasoline, walked to the Fraternal Order of Police building, lit the fuse and threw it at the building. He did not believe or want the building to burn down. He just thought it would leave scorch marks which would have to be painted over.

**{¶53}** Based on the foregoing, we find that a reasonable person who had been told they were not under arrest, was free to leave and end the interview, had twice previously ended the interview only to reinitiate, and was in his or her home when ultimately confessing, would have felt they were not under arrest at that time. Since "an officer may continue to question a suspect [in a non-custodial setting] so long as the officer's persistence does not render the statements to be made involuntary" the trial court did not err in concluding Appellant's statements were voluntary.

**{¶54}** Therefore, we find that the trial court did not err in overruling Appellant's Motion to Suppress and allow Appellant's statements into evidence.

**{¶55}** Appellant's second Assignment of Error is overruled.

**{¶56}** For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is hereby, affirmed.


By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.


JWW/br 0601